*Harlan & Craddock and Oates & Lindsey* for appellant; *Fry & Page* for appellee.

---

## James *et al.* *vs* Langdon.

APPEAL FROM THE CASEY CIRCUIT.

*Fraud. Instructions. Evidence. New trial. Practice.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

SUSANNAH LANGDON filed her bill, which, with the amendments, draws in question and asks the annulment of, 1st. a deed made by her father, David Roper and John Roper, to David F. James, for 285 acres of land bearing date the 24th day of June, 1837. 2d. Two deeds of emancipation of David Roper's slaves, one dated the 22d day of October, 1834, the other the 21st of August, 1837; and 3d. The will of David Roper, dated the 12th of February, 1839, and admitted to record in the County Court on the 2d of September, 1839, by which he bequeathed all his personal estate to two of the slaves whom he had emancipated by the deeds, the father and mother of the residue. The annulment of the deeds and will were sought on the ground of incapacity on the part of her father, David Roper, to make the same, and fraud, influence and imposition practised upon him, in his advanced age, and feeble state of body and mind, by those in whose favor those instruments were executed.

Upon an issue directed by the Chancellor, a jury found against the validity of the will, and upon the hearing the Circuit Court decreed its annulment, refusing to grant a new hearing before the jury, but an injunction which had been obtained by Mrs. Langdon against a judgment at law which had been recovered against her, by Daniel F. James as the administrator with the will annexed, upon a note for a portion of the personalty bequeathed to the

CHANCERY.

*Case 50.*

*October 23.*

Case stated.

The finding of the jury against the will, and decree of the court.

slaves, was dissolved. The Chancellor also decreed a cancelment of the deeds made by David Roper to John Roper, and the deed made by David and John to James, but sustained the deeds of emancipation, and as to them dismissed the complainant's bill. James and the slaves have appealed to this Court, and Mrs. Langdon has assigned cross errors.

We concur with the Chancellor below in the annullment of the deeds under which James claims title to the land.

David Roper was, at the date of the deeds to John, his son, and James, a credulous, feeble minded, very old and illiterate man, and was greatly alarmed at a suit which had been instituted against him for alimony by his second wife, who had separated from him. He had unbounded confidence in James, his neighbor, in whose opinions, advice and counsel, he trusted implicitly, and called upon him to do all his writings, and to aid him in all matters of difficulty. He trusted in him so implicitly, that no one could inspire him with distrust of James' friendship, honesty, and strict truth and integrity. James taking advantage of his confidence and perfect submission to his opinions and will, increased his alarm by telling him that his wife would recover one third of his entire estate, including a favorite family of slaves, whose emancipation at his death, had been long the fixed purpose of his heart, and stating to him that her lawyer would not take less than $1,400 for a compromise. After thus alarming his fears and increasing his dread and apprehension of the difficulties in which he was involved, he suggested that he thought a compromise might be effected for $1,200, and that if he would let him, James, have his land, (which was worth from twelve to fifteen hundred dollars,) he would undertake to compromise and pay the amount agreed to be given. The old man yielded to the terms proposed, and in conjunction with John, executed a bond for the land upon which he lived, and in a few days thereafter made a deed. James compromised the suit in a few days, at $550, which he paid and undertook to pay, with perhaps some little costs.

A deed thus extorted from the excited fears and terrors of a feeble minded old man, by one in whom he reposed as his trusty friend and adviser, such implicit confidence, at a price so inadequate, ought not and cannot be permitted to stand. James was applied to and trusted in as a friend to effect a compromise. He had just grounds to believe, and perhaps did know beforehand, that a compromise could be effected at a much less sum than the value of the land, and taking advantage of the alarm of a feeble minded old man, which he, in whose opinions he confided, had been instrumental in making, he extorted from him a contract by which, according to his own acknowledgment, he made a thousand dollars clear profit.

Nor can James avail himself of the deed made by David Roper to his son John, a few weeks before, to defeat the annullment of the deed made to him. John held the land in trust for his father, as is expressly charged in the complainant's bill, and is not denied by John, who is made defendant, and the proof conduces to the establishment of the fact that it was so held. No consideration was paid by John for the same. The contract was made by the old man with James, and the consideration was to enure solely to his benefit, and John had no concern with, or participation in the contract, and joined in the deed with his father merely to pass the legal title and obviate the circuity of re-conveying the legal title, first to the father and by him to James, and should be construed to have the same and no greater effect. His joining in the conveyance to James at the instance and in fulfilment of the contract of his father, must be regarded as a surrender of the title, or abandonment of the same, in favor of his father, and upon the rescission of the contract with James, the title re-vests and enures to the benefit of the father's heirs. And if the title did not so revert, the use would, and James could not defeat the complainant's recovery, whether she was entitled to hold in the one character or the other.

2d. We also concur with the Chancellor below in sustaining the two deeds of emancipation of his slaves, Hector and Lucy, and their children. It was the settled pur-

JAMES *et al.* vs LANGDON.

A deed procured by imposing upon the credulity of a feeble minded, illiterate and old man by one in whom he reposed confidence for an inadequate considera t i o n, declared fraudulent and vacated.

A deed of emancipation declared effectual for the purpose.

JAMES et al.
vs
LANGDON.

pose of his heart, entertained for near twenty years, and often expressed, that those slaves should serve no one after his death. Though illiterate and of weak mind, he possessed rationality and judgment abundantly sufficient at the time each of those deeds was executed, to understand and carry out this long entertained and fixed determination and purpose. At the time each of them were executed, he was an active old man, going about and attending to his farm and other business, with judgment, prudence and economy, and perfectly competent to understand the object and effect of such instruments, and procured them to be executed, and carried the latter deed to town and acknowledged it in open Court, and procured it to be recorded.

If it were conceded that the first deed should be treated as a will, and not being recorded as such, or proven by the competent number of witnesses, should not have the effect to emancipate the slaves, the last deed being good and executed and recorded, when the old man was competent to make it, the slaves were properly decreed to be entitled to their freedom.

3d. Had the jury found against the will, unembarrassed by the instructions of the Court, we should not have felt disposed to disturb their verdict. Indeed we incline to think that they should have found a verdict against the will. The will was made in his last illness, and not long before his death, at a time when his body and mind, naturally weak, were both much enfeebled by age and disease. Lucy and Hector, his two elder slaves, were attentive to his wants and he was much under their influence and control, and there is good reason to believe that Lucy used means to prejudice and embitter his mind against his children, or some of them, who visited and desired to wait on him. Indeed it is proven that he was induced to believe that his children visited him for the purpose of plundering him of his property, and there is grounds to believe that this impression was made on his mind by the tales of Lucy. If these facts be true, it is not surprising that an aged man like Roper, suffering under the pains of disease, and of a weak mind naturally, should become alienated from his children, who were

Though the verdict of the jury be in accordance with the opinion of this Court upon the evidence, yet if the Circuit Judge improperly expounded the law to the jury, there should be a reversal and a new trial ordered.

married off and absent from him, and have his affections concentrated upon those who were daily around his person, and plying him with tales calculated to excite and prejudice his mind, even against those children who visited him. If he was not operated upon by some such feelings, why was it that he did not, when in a better state of mind, at the time when he made the deeds of emancipation, also give his personal estate to his emancipated slaves?

But we think that some of the instructions given by the Court to the jury were misleading, and may have influenced their verdict. Indeed we cannot perceive how the jury could have found otherwise than they did, if they regarded these instructions, which in effect, required them to disregard the copy of the will produced and read to them as evidence, and to find against the will, if the original was not produced.

It is true, the will as the best evidence, should have been produced, if required, but its production may be waived expressly or by implication, and the omission to object to a copy as evidence, or waive its exclusion from the jury, should have been taken as an implied waiver of objection to the copy as evidence in the place of the original, and being admitted as evidence, an instruction should not have been given to the jury, on the trial of the merits, that it was *no evidence,* and they should find against the will because the original was not produced, when the witnesses to the will all pointed to and spoke of the will which had been proven and recorded in the County Court, and to which they had subscribed their names as witnesses in the presence of the the testator. Had the objection been made to the copy in due time, the original might have been produced, or the trial of the issue continued, at the point of time at which the objection was made. To allow the objection to be taken in the form of instructions to the jury, is to make Courts of Justice a trap to catch the unwary, or a gambling shop, in which the most cunning and successful gamester may succeed against right and justice. Besides, the question in contest, was not whether the decedent *signed* the paper as his will, but whether *he was of disposing mind and*

Where a copy of a will duly proved and recorded, was produced before a jury sworn to try the validity thereof, without objection, it was error in the Court to instruct the jury to find against the validity of the will, unless the original was produced.

*memory,* at the time when he signed it. And the witness-es spoke of, and had reference to the will in the County Court, and of its execution and establishment by the County Court, and the jury found against the will so spoken of and identified, and we cannot understand how they could have so found, unless they understood what will or paper was the subject of controversy.

The first and second instructions given at the instance of the complainant, were also misleading and erroneous. We cannot admit that if the testator was irrational upon any other subject, that he was rational and exercised judgment in making his will, and made it in conformity to his previous stated purpose and intention, that his will should be rejected upon the ground of incapacity to make it. It is true that the proof of a want of right reason on many other subjects with which he was familiar and acquainted in his better days, is evidence from which a jury or the Court in the trial of a will case, might infer a want of rationality, or capacity to make a will. But conceding, as the instructions certainly do, that the decedent possessed right reason and capacity on the subject of disposing of his property by will, the mere fact that he did not discover right reason and capacity upon some other subject or subjects, is surely no ground for a positive instruction to the jury to find against the will. A man may be perfectly competent to make a will, and understand and do other acts in relation to the control, management or disposition of his property, upon which his mind has been accustomed to act, and yet be quite irrational and lack judgment upon many other subjects on which he has not studied, or accustomed his mind to reason.

The Circuit Court also erred, upon sustaining the finding of the jury against the will, in dissolving the complainant's injunction against the judgment at law recovered against her upon her note for the penalty. A distribution of the same should have been made among the heirs, upon the usual terms of their executing refunding bonds, after setting apart a sufficient sum in the hands of an administrator, if one should be appointed, for the payment of debts, should any remain unsettled, allowing the complainant the interest of any of the heirs, which

Though a testator may be irrational on other subjects than the disposition of his property, yet he may be competent to make a will of his property.

A distributee injoining a debt due to the executor, should have a credit for the debt, unless there be debts to be paid, as to which the Chancellor should cause an inquiry by a commissioner, &c.

she might show before the master in chancery she had
purchased. And to enable the Chancellor to settle the whole matter properly and fairly, he shuld have submitted the case to the master, with proper instructions to make inquiry and report as to the debts, and amount coming to each heir. And should the jury, upon a second inquiry, find against the will, distribution should be made as directed.

For the errors indicated, the decree of the Circuit Court is reversed, and cause remanded, that the verdict of the jury may be set aside, and a new inquiry directed, and a decree rendered as intimated in this opinion, and the costs in this Court are divided.

*Harlan & Craddock* and *Fox* for appellants; *Kincaid* for appellee.