### EUBANKS vs. DOBBS, ADM'R.

An executor or administrator may maintain trover, for the property of the testator or intestate, wrongfully converted in his lifetime.

Where such action is brought against the son of the intestate, who relies upon a receipt of his father, given by way of acknowledgment of satisfaction for the property converted, the administrator cannot avoid the effect of this receipt, by proving that it was given in fraud of creditors ; but may prove that the intestate was *insane* when he gave it.

THIS was a case tried in Pope Circuit Court, in October, A. D. 1841, before the Hon. RICHARD C. S. BROWN, one of the Circuit Judges. Mephy Dobbs, as administrator of the estate of Lewis Eubanks, deceased, sued John Eubanks, son of the itestate, in trover, for the conversion by him, in the lifetime of the intestate, of sundry articles of property, and *choses in action*, belonging to the intestate. The defendant pleaded the general issue, and that he had paid the intestate, in his lifetime, two hundred and fifty dollars, in full satisfaction and discharge of the grievances in the declaration mentioned. At the trial, divers exceptions were taken, which it is not necessary to notice. To support the special plea, the defendant offered his father's receipt, in the following words: "Received of John Eubanks, two hundred and fifty dollars, in full of all debts, dues, or demands, up to this date." To avoid the effect of this instrument, the Court, against the objections of the defendant, admitted evidence to show that the intestate executed it to defraud his creditors, and when he was insane; and also instructed the jury, that, if they believed that the receipt was executed to defraud creditors, they ought to find for the plaintiff. The jury found for the plaintiff $248 and costs, for which judgment was rendered, and the defendant sued his writ of error.

*Gilchrist & Evans*, for the plaintiff.

*Linton*, contra.

*By the Court*, DICKINSON, J.

There are several bills of exception taken during the progress of

the trial, which we deem it unnecessary to discuss, as the main points in the cause arise upon the instructions. The record is encumbered with much useless matter; there are but few principles of law applicable to the case, and those are simple, and every way familiar.

The plaintiff sought to charge the defendant, upon the ground that he had received the notes and other property sued for, during the life of the intestate, who was proved to be his father; and that he had converted the same to his own use and benefit. Will the action lie? Upon this point, there can be no doubt. The executor or administrator might bring trover for the wrongful conversion of the property of his testator or decedent. The defendant, in the present instance, endeavors to discharge himself, by producing an acknowledgment of satisfaction, in the receipt of his father for the value of the property. The plaintiff attempts to avoid this conclusion, 1st, upon the ground of insanity; and, 2d, upon that of fraud. The Judge who tried the cause has expressly decided, that the administrators would have a right to recover, although the proof established the fact that the receipt was given in fraud of the rights of creditors. In this there is certainly manifest error; and the instruction being every way material and important, for the direction and government of the verdict, of course we are authorized to presume, that it must have had considerable weight and influence in determining the cause. (It is perfectly clear, that, if the proof showed that if it was executed in fraud of the rights of creditors, then neither the party executing it, nor his administrators, nor any claiming under him, could take advantage of that fraud. To allow them to do so, would be to encourage fraud instead of suppressing it, and hold out the strongest temptation for its perpetration. The maxim is, that no one shall take advantage of his own wrong: much less, of his own fraud. While the fraud violates and destroys the contract, as respects the rights of third persons, or creditors, still the argument is rightly held to be binding between the parties themselves. And, unless this was the rule, the rights of creditors, or third persons, could not be protected or secured against fraudulent devices. The universality of the rule is only equalled by its importance; and, therefore, when the Court below instructed the jury, that the fraud of the deceased could be made to benefit his estate, he certainly contra-

vened a principle of natural and municipal justice, which is recognized by all the authorities, and enforced by courts, with the most rigid exaction.

It is certainly true, that if the deceased, at the time of executing the receipt, was disqualified, from insanity or imbecility of mind, of course neither he in his lifetime, nor those who succeeded him, are bound by any such pretended contract. Insanity or imbecility of mind destroys the will of the contract, and takes from it its binding efficacy and force. There can be no volition where there is neither judgment nor consent; and him who expects to take advantage of this weakness or aberration of mind, the law wisely restrains from doing so, and holds the contract a mere nullity, or no contract at all. No two things can be more widely separate than fraud and insanity. They cannot exist together; the one deserves the punishment of the law; the other, its sympathy and protection; and so they have ever been treated. If the receipt was given, and the party executing it knew not what he did, the law holds it a nullity *ab initio*. On the other hand, if it was executed in fraud, it is binding between the parties themselves and all who claim under them; and it is absolutely void and of no effect, as to creditors. This principle the defendant has been denied the advantage of.

Judgment reversed, and new trial awarded.