BURGESS v. POLLOCK.

1. **Deed:** COMPETENCY OF GRANTOR: MONOMANIA. A deed cannot be impeached on the ground that the grantor was a monomaniac, when his monomania did not extend to the subject out of which the conveyance grew, nor affect his reason or judgment in matters of business.

*Appeal from Linn Circuit Court.*

WEDNESDAY, April 7.

ACTION in equity to set aside a deed executed to the defendant by the plaintiff's father, Alexander Pollock, who has, since the execution of the deed, died intestate. The petition avers that the deed was without consideration; that it was obtained by undue influence, and that the grantor, at the time of its execution, was insane. The answer is a general denial. There was a decree for the plaintiff, and the defendant appeals.

*James D. Griffin,* for appellant.

*Thompson & Davis,* for appellee.

ADAMS, CH. J.—I. The defendant, at the time of the making of the deed, was Alexander Pollock's wife. Whether any valuable consideration was paid by her, or not, the deed cannot be set aside for want of consideration. *Mercer v. Mercer,* 29 Iowa, 557.

II. The claim that the deed should be set aside, as having been obtained by undue influence, is equally untenable, for the evidence wholly fails to support the allegations.

III. Whether it should be set aside upon the ground that Pollock was insane, at the time he executed it, is not quite so clear.

Pollock, at the time of his death, was about sixty years of age. He had been living for many years upon his farm in Linn county, consisting of about one hundred and twenty-

eight acres, and which is the land in controversy. The defendant was Pollock's second wife, by whom he had eight children, most of whom were minors at the time of his death. By his first wife he had two children, of whom the plaintiff is one. She was, at the time of his death, and at the time of execution of the deed, married and settled in life. Pollock had, for several years, been in poor health, and incapacitated for much labor, but he superintended his farm, and transacted his general business, the labor upon the farm being done largely by his sons. Towards the close of his life he became despondent, and frequently expressed grave apprehensions in regard to the support of his large family. In February, 1878, he conveyed his farm to his wife, by executing the deed in question. He stated, at the time of its execution, that his health was poor, and that he was liable to drop off at any time. He also stated that he thought it would be better to leave the property all to his wife to raise the rest of the children, than to have it separated so it would not amount to much for any of them. About two weeks afterward he was drowned. It was thought by some that he committed suicide, and the coroner so found, but the evidence that he came to his death by suicide, rather than by accident, is very slight. All the evidence adduced upon the subject leads to no satisfactory conclusion either way.

The deed which the plaintiff seeks to set aside was drawn by, and acknowledged before, one John McArthur, and witnessed by two witnesses. They all testify that they saw nothing peculiar in his actions or conversation. McArthur testifies that he had been acquainted with him for twenty-seven years, and it did not occur to him at the time he took his acknowledgment that he was insane, or he would not have done it. The plaintiff's husband was examined in her behalf, and testified that he lived three-fourths of a mile from where Pollock lived, that he was acquainted with him for eleven years, and saw him often, and never thought of his being insane until he found that he had conveyed his farm to

his wife. Another witness for the plaintiff, who had been acquainted with Pollock twenty-five years, after testifying to some strangeness of talk by Pollock upon the subject of religion, tending to show mental aberration upon that subject, stated, upon cross-examination, that "it would be the hardest thing in the world for him to decide whether his impression was that Pollock was insane." Other witnesses, however, were clearly of the opinion that he was insane upon the subject of religion. His remarks, so far as they have been detailed, would not very clearly indicate it, and some persons who were intimate with him, and often heard him talk upon the subject of religion, as well as other subjects, testify that they saw no indication of insanity.

It is not important that we should set out the evidence in full, or enumerate the witnesses upon each side. It is sufficient to say that we have all read the evidence separately, and have all separately come to the conclusion that Pollock was laboring under some insane delusions upon the subject of religion, although they were not of a very marked character. Upon all other subjects, it appears to us that he was sane. The evidence is overwhelming that he transacted his business with prudence and good judgment, and was respected and esteemed by his neighbors. There is certainly nothing in the transaction complained of indicating insanity. On the other hand, it appears to have been dictated by prudence and forethought.

We have, then, the question as to whether the deed of a monomaniac can be set aside on account of the monomania, where there is no reason to believe that there was not the full exercise of reason and judgment on the part of the grantor in the execution of the deed. In our opinion, it cannot. Neither contracting nor testamentary capacity requires entire soundness of mind. In Parsons on Contracts, 1 Vol., 383, the author, speaking of what will incapacitate a person for making a contract, says: "There must be such a condition of insanity or idiocy as,

1. DEED : competency of grantor: monomania.

from its character or intensity, disables him from understanding the nature and effects of his acts," citing *Ex parte Nottington*, 1 Ala., 400. Upon the subject of partial insanity, or monomania, as affecting testamentary capacity, see *Potts v. House*, 6 Ga., 324; *Townsend v. Townsend*, 7 Gill., 10; *Boyd v. Eby*, 8 Watts, 71; *Jame v. Langton*, 7 B. Mon., 193.

In *Boyce v. Smith*, 9 Gratt., 704, a question arose which was substantially the same as that involved in the case at bar. It was held that a monomaniac might make a valid contract, where the monomania did not extend to the subject out of which the contract grew.

In our opinion, the court erred in setting the deed aside.

REVERSED.