KELLY, et al vs JOHNSON.

Opinion delivered January 30, 1897.

*1. Bill of Exceptions—Striking From Files.*

A bill of exceptions is required to be filed with the clerk of the trial court, and by him certified to the Appellate Court, and when a bill of exceptions is filed in the Appellate Court, without such filing and certification by the Clerk of the trial court it should be stricken from the files.

*2. Title to Indian Lands—Forcible Entry and Detainer.*

While the sale by a citizen of the Chocaaw Nation to a non-citizen thereof, passes no title to lands, it does pass all of the rights of the citizen to the occupancy and use of the land, which a citizen enjoys under the laws of the Choctaw Nation and establishes a sufficient estate to support an action in forcible entry and detainer, as against any person entering said lands unlawfully.

Appeal from the United States Court for the Central District.

YANCEY LEWIS, Judge.

Action of forcible entry and detainer for a town lot by Harry Johnson against W. F. Kelly and others. Judgment for plaintiff. Defendant appeals. Affirmed.

This case was instituted in the United States Court in the Central district of the Indian Territory, at South McAlester, on the 11th day of April, 1896, to recover possession of a lot situated in the town of South McAlester, Ind. T. It is an action of forcible entry and detainer, and the complaint sets forth, in the usual form, that the plaintiff was in actual, lawful, and peaceable possession, and that on the 9th

day of April, 1896, the defendants wrongfully dispossessed him, and with strong hands cut and destroyed plaintiff's fence inclosing the same, and entered upon and took possession of said premises, and held and still hold possession, with force and arms, without the consent of the plaintiff and against his will. The defendants in their answer deny that the plaintiff was in actual, lawful, and peaceable possession of the premises at the time indicated, and deny that they conspired together for the purpose of dispossessing plaintiff, and with strong hands cut and destroyed plaintiff's fence inclosing the same, and entered upon and took possession of said premises.

*Jackson, Cole & Redwine,* for appellants.

1. The testimony shows that there was no forcible entry. At most that there was only an ordinary trespass, and the court should have instructed a verdict for defendant. 1 Ark. 535, Mansf. Dig. § 3347; 13 Ark. 449. The alleged constructive possession of plaintiff was not sufficient to sustain the action of forcible entry and detainer. Johnson vs West, 41 Ark. 540; 27 Ark. 46; 38 Ark. 257; 8 A. & E. Enc. Law 101.

*Wilkinson & Wilkinson,* for appellee.

No brief is on file for appellee.

SPRINGER, C. J. (after stating the facts.) Counsel for appellee files a motion in this court to strike the bill of exceptions from the record, and to affirm the judgment in the court below. Counsel for appellants file a counter motion for an order of certiorari on the court below to bring into this court a certified transcript of the proceedings in this case. These motions recite the fact that the bill of exceptions, by inadvertence of appellants' counsel, was filed in the

court of appeals without having been first filed in the trial court, and by the clerk of that court certified to the court of appeals. This fact is conceded, and, for want of a bill of exceptions, the counsel for appellee moves that the pretended bill of exceptions be stricken from the files, and that the appeal be dismissed and the judgment affirmed. It is conceded that the appellants have not complied with the rules of this court in filing their bill of exceptions, and technically the appellee is entitled to have the pretended bill of exceptions stricken from the files, and, in the absence of a bill of exceptions in the case, is entitled to have the judgment of the court below affirmed. The court would be inclined to suggest some method by which the rights of the litigants could be protected against the inadvertence, negligence, or ignorance of counsel, wherever such course could be pursued; and for the purpose of ascertaining whether there was a good cause of appeal on the part of the appellants, and whether wrong or injustice had been done to the appellants in consequence of the inadvertence complained of, we have carefully examined the brief filed by appellants, and the alleged bill of exceptions, which is among the papers in the record before us. The evidence has been set forth in full in the brief of appellants, and is to the effect that the plaintiff below, Harry Johnson, who was a citizen of the United States, purchased a lot in the town of South McAlester from J. J. McAlester who is an adopted citizen of the Choctaw Nation; that he put posts around the same, and a three-wire fence; and that he paid McAlester for the lot $200; that the fence was not kept up over the entire lot, but Johnson had on it, at the time defendants took possession of it, a steam engine and two or three rock wagons; that the defendants owned a frame house in another part of the town, in which a family was living, and that this house was moved along one of the main streets of the town,—the family still residing in it,—and, when opposite the lot in question, the defendants

moved the house upon this lot, breaking down the posts and a part of the fence.  The defendant Kelly gave the following explanation as his excuse for moving on the lot:  "The reason we moved the house on the lot was because my wife and myself are citizens of the Choctaw Nation, and we had a right to move the house upon it, because the land was public domain of the Choctaw Nation."

The appellants excepted to the instructions of the court, which were as follows:  "Gentlemen of the jury, I charge you that the forcible entry and detainer is the unlawful taking possession of the lands and tenements of another without his consent.  And if you believe from the evidence that the defendants, in entering upon the land in question, broke and tore down the fence, you will find in favor of the plaintiff, Harry Johnson.  To constitute forcible entry and detainer, it is not necessary that there should be actual force used against the person, in taking possession of the land and tenements.  The entering upon lands and tenements unlawfully —that is, by breaking the inclosure—is sufficient to sustain the action of forcible entry and detainer.  The object of the statute is to prevent breaches of the peace, and to prevent a man from taking the law in his own hands and forcibly taking possession of the lands or tenements which he claims.  Before the plaintiff can sustain his action, he must show that he was in actual and peaceable possession of the land at the time the defendants moved upon it; and, if you believe from the evidence that the plaintiff was not in the possession of the land at that time, then you will find in favor of the defendants.  You are judges of the weight of the evidence and the credibility of the witnesses."  Counsel for appellants asked the court to give other instructions, to the effect:  First, That, if no more force was used by the defendants than was requisite to constitute an ordinary trespass, the jury should find for the defendants.  Second, That, at the time the defendants entered upon the land in con-

Forcible entry and detainer.
Actual force not necessary

troversy, there was no improvement upon said land, except
a partial fence around it, and the said land was not occupied
by any one, and the entering upon said land was done qui-
etly, and not tumultuously, and no weapons, threats, or
intimidations were resorted to, the jury should find for the
defendants.    Third.    This instruction asked was with refer-
ence to the force used.    Fourth.    This instruction asked
was in reference to constructive possession, and that such
possession was not sufficient to maintain the action, and, un-
less the plaintiff was in actual possession, the jury should
find for the defendants.    Fifth.    This instruction asked was
to the effect that if the defendants did nothing more than
enter upon the land peaceably, although it might have been
unlawfully, the jury should find for the defendants.    All the
instructions asked by the defendants were refused.    The
jury returned a verdict for the plaintiff below, or the appel-
lee in this court.

The questions of fact were fairly submitted to the jury,
and found in favor of the plaintiff below, or the appellee in
this court.    The law, as announced by the trial court in its
instructions, is in accordance with precedent, and no error
appears therein, under the facts as they were established in
the case.    The facts present an ordinary case of what is
known as "lot jumping."    The appellants claim no other
right to the lot than that they were citizens of the Choctaw
Nation, and that the lot was public domain.    It is conceded
that the appellee purchased the lot from J. J. McAlester, an
adopted and recognized citizen of the Choctaw Nation; that
he had, at the time of its occupancy by the appellants, that
kind of possession which alone can be had of lots upon
which a person has not erected buildings, but which has
been inclosed.    The contention of the appellants, that the
lot was a part of the public domain of the Choctaw Nation,
is untenable.    It had been segregated from the public
domain, and was in the undisputed and rightful possession

of a citizen of that Nation. While the sale by McAlester to Johnson did not pass the title to the land, it did pass McAlester's right of occupancy for the time being; and appellee's possession was, so far as this case is concerned, the possession of McAlester. Although the transaction was called a sale of the lot, yet it was only such a disposition of the property as can be made under the conditions which exist in the Five Civilized Tribes. It was a possession that all persons were obliged to respect, and from which the appellee could not be ejected without due process of law. Although the appellants, Kelly and others, may have been citizens of the Choctaw Nation, they were not authorized by the Nation to contest the title or possession of the lot in question with the appellee. The entrance upon the land was a trespass, and their forcible entry brought them within the act of congress put in force in the Indian Territory in reference to those who make forcible entries upon lands. The United States Court had jurisdiction of the parties, the law in force in the Indian Territory was applicable to the facts, the instructions of the court are without error, and the verdict of the jury was to the effect that the appellee was entitled to the possession of the lot in question. The contention of the appellants, therefore, is without merit, and cannot be recognized by a court which has been established to administer justice. "Lot jumping," as it is called, cannot be justified in the Indian Territory or elsewhere. The defendants were trespassers, and are not entitled to any relief or consideration whatever. The motion of the appellee, therefore, to strike the bill of exceptions from the files, is allowed, and the judgment of the court below is affirmed.

KILGORE, J. I concur with the chief Justice in affirming the judgment in this case, and concur with him in his observations and conclusions, and I agree with him in sustaining the motion to strike out the bill of exceptions. The bill of exceptions contains a statement of facts. The Chief

Sale of Indian lands. What rights pass.

Lot Jumping.

Justice considers the questions raised in the bill of exceptions, and determines therefrom that there was no merit in the appellant's cause of action. My theory is that the motion to strike out ought to have been sustained in limine, and the judgment affirmed on the record. All Appellate Courts lay down rules regulating the practice and procedure in such courts, and they are inclined to exact a strict compliance with these rules. It is essential that they should do so, to enable them to handle the business with which their dockets are usually overloaded, and the failure to comply with such rules is usually fatal to the appellant's cause. A liberal and elastic procedure in a trial court is wisely devised, for the purpose of arriving at the very truth of the contention in that court, that justice may be done. But the rules of practice in an appellate court are, and ought to be, more exacting. The merits of the cause have been determined before it reaches that court, and the duty of that court is largely to ascertain whether the adjudication has been according to law. If it is the duty of an appellate court to consider bills of exceptions or other papers not properly in the record for any purpose, it would have to consider them for all purposes; and, if such practice were to obtain generally, the rules of procedure in the Appellate Court would become a nullity. There is no difficulty in understanding and complying with the rules in these matters, and the intelligen and diligent lawyer recognizes the importance of a stric compliance with the rules, and presents his case in accord therewith. If the Appellate Court habitually dispenses with or even relaxes, rules governing the practice in such court it must have the effect to place at a premium ignorance and carelessness, and discount learning and diligence, in the pro fession.