## WILHITE VS COOMBS.

### Opinion delivered October 19, 1904.

1. *Pleading—Ruling on, Afterwards Recalled, not Assignable as Error.*

Where the court, after striking plaintiff's replication from the files, afterwards recalled its decision before any testimony was taken and defendant withdrew his objections to the filing of same, and plaintiff failed to take any further steps concerning its filing, the plaintiff cannot be heard, on appeal to assign as error the court's ruling striking out the replication.

2. *Indian Lands—Ejectment and Title from Common Source—Cannot be Attacked—Prior Possession Prevails.*

> Where in an action of ejectment, both parties deraign title from a common source, the defendant will not be permitted to attack the plaintiff's title upon the ground that the common source had no right to convey. The prior possession, in such cases will prevail.

Appeal from the United States Court for the Northern District.

Joseph A. Gill, Judge.

Ejectment by Ola Wilhite against Leslie Coombs. Judgment for defendant. Plaintiff appeals. Reversed.

This is an action of ejectment brought by plaintiff (the appellant) to recover of the defendant the possession of lots numbered 9 and 10, lying and situate out of, but adjacent to, the town of Bartlesville, Cherokee Nation, Ind. Ter. We adopt in part the statement of facts set out by appellant in his brief:

Plaintiff, in his complaint, set forth a written contract entered into between the parties on the 15th day of April, 1901, by the terms of which, in consideration of $250, the plaintiff (appellant herein) sold, transferred, and delivered to the defendant (appellee) the right of possession to lots 9 and 10 in block 10 in Johnstone's Addition to the Town of Bartlesville, in the Northern District of the Indian Territory. The agreement further recited that, as a further consideration for the right of possession to the lots, the appellee should within eighteen months from that date erect upon the lots a stone or brick building of 60 feet frontage on Second street—the building to be a good, substantial building—and, in the event of failure to erect a building upon said lots, the right of possession should revert to the plaintiff, and the $250 so paid should be repaid defendant. The plaintiff further

alleged an entry at that time under the contract by the defendant, and that he had occupied the lots since that time. It further alleged that the defendant failed to erect the building agreed to, and that, after the expiration of the time in which he was to erect the building, the plaintiff tendered the defendant the sum of $250, as called for in the contract, and demanded that the defendant take the same and vacate the lots, and the defendant refused to take the money, and refused to vacate the premises, and was occupying them at that time; that the tender took place in October, 1902, and, at the time of the tender, plaintiff made verbal demand for the possession, and afterwards, on the 30th day of October, 1902, plaintiff made written demand for the delivery of possession; that at all times since the 15th day of October, 1902, the plaintiff stood ready and willing to pay the $250 called for in the contract; and that he also tendered into court the $250. The defendant filed answer on the 18th of March, 1903, denying that on the 15th of April, 1901, the plaintiff owned and was in possession of a plat or tract of ground located in the town of Bartlesville, Ind. Ter., designated as lots Nos. 9 and 10 in Johnstone's Addition to the Town of Bartlesville. He also denied that plaintiff let the defendant into possession of the lots under a contract between the plaintiff and defendant, as alleged in complaint of plaintiff. He admitted, however, that he entered into the contract set out, and further stated that the plaintiff represented that he owned lot No. 9; but the defendant alleged also that plaintiff did not claim at that time or at any other time that he had anything to do with lot No. 10. Defendant also alleged that about April, 1901, one William Johnstone, a citizen of the Cherokee Nation, was in lawful possession of the land described, and that he, in order to promote the growth of Bartlesville, told the defendant that he could have possession of lot 9, and that plaintiff could have possession of lot 10; that said Johnstone never gave any bill of sale to either plaintiff or defendant; that in fact the said

Johnstone only gave permission to occupy the respective parcels of land mentioned. The answer further stated that lots 9 and 10 were a part of the public domain of the Cherokee Nation, and were a part or parcel of no incorporated town; that, after the defendant had been given permission to occupy lot 10, he purchased from plaintiff plaintiff's possessory right in and to lot 10, paying $250 cash therefor; that at the time of the exchange between plaintiff and defendant, and for several months afterwards, neither lots 9 or 10 were in the incorporated town of Bartlesville, Ind. Ter., but were a part of the public domain of the Cherokee Nation, and were not inclosed or in any way improved or actually occupied by any one; that at the time of the contract there were no improvements on either of said lots; and that both plaintiff and defendant were citizens of the United States, and not members of any Indian tribe. Defendant also alleges that, at the time of entering into the contract with plaintiff, the plaintiff had nothing to convey to the defendant, and the plaintiff knew he did not, and the plaintiff at no time claimed any interest in lot 10, for the reason that the possession of said lot was in defendant at that time. The answer further sets out an agreement whereby the time for the erection of the building mentioned in the first contract was extended, and the defendant was to have as long as he wanted to erect said building mentioned in said contract; that at that time the defendant had placed on the lots a stone foundation at a cost of $375, and had contracted for lumber with which to erect the building, and had purchased the same; that, on account of failure to get sufficient brick to erect his building, defendant saw that he could not complete the building prior to October 15, 1902, and for that reason obtained an agreement with plaintiff for an extension of time in which to erect the building; that the defendant has complied with all contracts made with the plaintiff. The answer further demanded judgment against the plaintiff for the return of the $250 paid, and for costs and all other relief to which he might be entitled.

When the case was called for trial, plaintiff filed a reply to part of the answer of the defendant, and the defendant filed a motion to have the reply stricken, because the answer did not set up any matter constituting a set-off or counterclaim. Thereupon plaintiff, by his counsel, stated that he desired to plead the statute of frauds, but the court struck the reply from the files, over the objection and exception of the plaintiff. The court afterwards, and before any testimony was taken, recalled its former decision striking the reply from the files, and the defendant withdrew his objections. The plaintiff, however, failed to file his replication, as he could have done."

*W. H. Kornegay* and *W. A. Chase*, for appellant.

*E. B. Lawson* and *Hutchings, West & Parker*, for appellee.

CLAYTON, J.   There are five specifications of error assigned. It will, however, only be necessary for us to consider two of them—the first and fifth. They are as follows: "(1)   The court erred in striking out plaintiff's reply to a portion of the answer." "(5)   The court erred in instructing the jury to find for the defendant."

As the court had recalled its decision overruling plaintiff's motion to be allowed to file his replication, and the defendant had withdrawn his objections to said motion, the way was open for him to have filed it; and, if it were a necessary pleading, he should have done so.   The fault, therefore, was not that of the court, but solely of the plaintiff, and he cannot now be heard to complain of the action of the court.

The fifth specification raises a more serious question. Did the court err in peremptorily charging the jury to find for the defendant on the ground that the plaintiff, as against the de-

fendant, was without sufficient title to maintain an action of ejectment? The answer averred, and it was conclusively shown by the proof, that the title to the land in controversy, at the time the contract between the parties was executed, was in the Cherokee Nation; that the land conveyed by it had not been segregated from the Cherokee domain. It was a part of a tract of land which had been laid off into lots and blocks, streets and alleys, by one William Johnstone, a Cherokee Indian, who possessed the independent Indian's right of possession, and from whom both parties claimed to deraign, by verbal contract, whatever title they may have had. The tract was contiguous to the segregated and incorporated town of Bartlesville, and was extensively built upon and improved. Steps were being taken to have it laid off and platted by the town site commission, with the view of annexing it to the aforesaid town of Bartlesville. There was proof that the plaintiff at the time of the execution of the contract, and before, was in possession of at least one of the lots sued for; both being located on the main street of the town.

The contract between the parties is as follows:

"This agreement, made and entered into this 15th day of April, 1901, by and between Ola Wilhite, of the town of Bartlesville, Ind. Ter., of the first part, and Leslie Coombs, of Blackwell, Okla. Ter., of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of two hundred and fifty and no-100 dollars, to him in hand paid by the party of the second part, receipt whereof is hereby acknowledged, does hereby sell, transfer and deliver unto said party of the second part the right of possession to lots number nine and ten in block number ten in Johnstone's addition to the town of Bartlesville, in the northern district of the Indian Territory, to have and to hold the same unto the said party of the second part, his heirs and assigns.

"It is further agreed by and between the parties to this contract and sale as a further consideration for right of possession to said lots that the party of the second part shall, within eighteen months from the date hereof, have erected upon said lots a stone or brick building of sixty feet frontage on Second street, said building to be a good substantial building and in the event that he should fail to erect such building upon said lots within eighteen months from date hereof, then the right of possession shall revert back to said party of the first part upon his paying or refunding to said party of the second part the two hundred and fifty dollars so paid as aforesaid.

"In Witness Whereof, the said parties have hereunto set their hands this 15th day of April, 1901. (Signed)     Ola Wilhite. Leslie Coombs."

As heretofore stated, both of the parties deraign their title and right of possession from the Cherokee Indian, Johnstone, and therefore neither, in an action of ejectment, can dispute his title or his right to convey. "It is not material from whom or how the common source derived the title to the lands in controversy. As both parties admit the title to have been in the common source, they cannot be heard to deny it or fortify it by evidence on trial. The party having the stronger or best claim or title from the common source, as a starting point, must prevail." Newell on Ejectment, p. 580, § 3. And as between the parties claiming from a common source, this is true as to Indian lands as well as all others. As long as the United States, or the Cherokee Nation, or the individual Indian is not a party to the suit, the title or the right of possession in the Indian, and his right to convey, stand admitted. The defendant, by disputing plaintiff's title because of failure of title in his grantor, disputes his own. And this he will not be allowed to do. But if it be true that neither had title, then the question would arise as to

who was in prior possession of the land. If the plaintiff were in prior possession, and the defendant could show no better title, he (the plaintiff) would prevail. Before the passage of the Curtis bill (Act June 28, 1898, c. 517, 30 Stat. 495), at a time when there was no provision of law for the establishment of town sites on Indian lands, this court decided "that a note given in consideration of a transfer of a certain tract of land in a town in the Indian Territory, which tract was unoccupied and unimproved, is based on sufficient consideration, though the title was in an Indian," and "that the business of renting unoccupied lots in a town in the Indian Territory is not against public policy, though the title to the lots was in the Indians." Tye vs Chickasha Town Co. 2 Ind. Ter. Rep. 113, (48 S. W. 1021); Walker Trading Co. vs Grady Trading Co. 1 Ind. Ter. Rep. 191, (39 S. W. 354).

In our opinion, this case should have been presented to the jury on proper instructions upon the question as to the prior right of plaintiff or defendant to the possession of the lots as deraigned from Johnstone, their common grantor, and it was error on the part of the court to peremptorily charge the jury to find for the defendant.

Reversed and remanded.

RAYMOND, C. J., and TOWNSEND, J., concur.