## TRUEBLOOD v. JOHNSON.

### No. 3086.  Opinion Filed March 24, 1914.

### (139 Pac. 957.)

**INDIANS—Allotment—Removal of Fencing.** E. B. Johnson, a Chickasaw Citizen by blood, under a prevailing custom in the Chickasaw Nation, had inclosed and improved more land than he was permitted to select as allotment for himself and family. A part of the land thus inclosed and improved by him had been selected by and allotted to Mary J. Trueblood. After she had moved onto the allotment, Johnson sought to remove the fencing which he had placed on and around same prior to allotment. Held, acting within a reasonable time, he had the right to remove his fencing.

(Syllabus by Harrison, C.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by Mary J. Trueblood against E. B. Johnson to restrain defendant from removing improvements from an allotment. From a judgment in favor of defendant, dissolving a temporary restraining order, plaintiff brings error. Affirmed.

*J. W. Hocker,* for plaintiff in error.

*J. F. Sharp, John E. Lutrell,* and *J. B. Dudley,* for defendant in error.

Opinion by HARRISON, C.  The facts in this case are that Mary J. Trueblood had selected an allotment, upon which improvements, consisting of a house, sheds, an orchard, and fencings had been made by Johnson prior to the selection of the allotment by Trueblood. There is no controversy between the parties over the right to the allotment, but after it had been awarded to plaintiff Johnson sought to remove certain improvements, and Trueblood obtained a temporary restraining order against his so doing. The cause came on for final hearing in February, 1911, at which time judgment was rendered dissolving the temporary restraining order and ordering the plaintiff's petition dismissed, and that plaintiff be adjudged to pay the costs incurred. From

this judgment, plaintiff appeals upon three assignments of error, all of which are determined under the question whether or not Johnson had the right to remove the improvements which he had placed on the premises prior to allotment.

It is unnecessary to decide in this case whether Johnson had the right to remove the sheds and house and orchard, as in his answer he expressly waives the right to remove anything except some hog fencing and some barbed wire fencing which he had placed on a portion of the allotments. The contention of plaintiff in error that the improvements, consisting of the house, sheds, windmill, and orchard, became a part of the realty and passed to Trueblood with the award to her as allottee, is immaterial in this case, and the authorities cited in support of such contention are not decisive of the question herein involved, for the reason, as above stated, that defendant expressly waived all right to any of the improvements except the fencings. The question here is whether this wire fencing constituted such a permanent fixture as to become a part of the realty, the title to which passed with the title to the realty, or whether it is of a chattel character, that could be removed from the premises.

It must be borne in mind that Trueblood came into possession of this allotment, not by a conveyance from Johnson, in which case we think the rule of law would be different, and Johnson would be held to have conveyed all the improvements on the premises, unless expressly reserved in the instrument of conveyance; but in this case Johnson had placed the improvements in question upon these premises, and had used and occupied them for a number of years, up to the time of the selection of allotments, and under an existing custom or regulation which permitted such things to be done. Although the allotment had been awarded in December, 1903, it was not taken possession of by the allottee until January, 1905, and it was in February, about the 10th or 12th, that Johnson sought to remove the fences.

In *Winans v. Beidler,* 6 Okla. 603, 52 Pac. 405, it was held that:

"A homestead settler, who makes improvements upon a tract of government land and whose entry is afterwards canceled,

may remove the same after the land has been awarded to an adverse settler."

Also in *McGlassen v. State*, 9 Okla. Cr. 135, 130 Pac. 1174, in a criminal action, wherein J. N. McGlassen was being prosecuted for maliciously removing fencing which he had placed on an allotment prior to the time of its being allotted, the Criminal Court of Appeals held:

"(a) Prior to allotment, the lands of the Choctaws and Chickasaws were held in common, and, until legislation providing for allotment was passed, any member of such tribes had a right to inclose and occupy any unoccupied portion of the lands belonging to his tribe. (b) A member of the Choctaw or Chickasaw Tribe, who was entitled to an allotment of the lands of said tribe, and who, after taking such allotment for himself and family, had improvements remaining on other lands, was entitled to remove the same, or to sell such improvements to other members of said tribe who were entitiled to take allotment, or remove them, at his option."

We think that the rule announced in the foregoing authorities may be correctly and justly applied to the case at bar, and that the defendant, Johnson, acting within a reasonable time after Trueblood had gone into possession of the allotment in question, under the circumstances disclosed by this record, should be allowed to remove his fencing, and that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.