## CONTINENTAL GIN CO. v. DE BORD.

No. 5377.    Opinion Filed May 25, 1915.

Rehearing Denied Aug. 3, 1915.

(150 Pac. 892.)

1.    CHATTEL   MORTGAGES — Conversion — Mortgaged   Property.. Even though a mortgagee may not have been in actual possession of the property, yet, if he exercises acts of dominion over it and participates in the wrongful acts of the party who has actual possession by aiding and abetting in the wrongful disposition thereof, and by sharing in the proceeds of a wrongful sale of same, he would be guilty of a conversion of such property.

2.    TROVER   AND   CONVERSION—Property   Subject—Severance from Realty.    Under the facts of this case the parties have by their acts and conduct and agreements, effective as between them-

selves, treated the property for the conversion of which this action was brought, consisting of buildings and machinery in a gin plant, in such manner that thereby they have effected a constructive severance of the property from the realty so as to make the same the subject of conversion by one of the parties, for which an action will lie.

3. CONTRACTS—Validity—Mental Capacity. Under the laws of Arkansas in force in the Indian Territory prior to statehood, where a party to a contract was suffering from mental derangement of such a character as to disqualify him from intelligently comprehending and acting upon the business affairs out of which the instrument grew, and to prevent him from understanding the nature and consequences of his acts, the contract is void and of no binding force.

4. TROVER AND CONVERSION—Mortgaged Property—Evidence. Where a mortgagee of personal property was in possession and the mortgagor was at the time suffering from mental derangement, and where a report was current that the mortgagor was dead, and there were three separate mortgages upon the property, and same was wrongfully converted by one of the mortgagees, and at the time of the sale thereof other property was included in the sale, upon which no separate price was fixed, nor any separate value placed upon the property alleged to have been converted, evidence of the price at which the entire lot of property was sold was not proper to be considered by the jury in determining the amount of the plaintiff's recovery in an action for damages for the wrongful conversion of the property covered by the mortgage.

(Syllabus by the Court.)

*Error from District Court, Garvin County;*

*R. McMillan, Judge.*

Action by J. D. De Bord against the Continental Gin Company. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 34 Okla. 66, 123 Pac. 159.

*Yerker E. Taylor* and *Stuart & Bell,* for plaintiff in error.

*Chas. H. Thomason* and *Blanton & Andrews,* for defendant in error.

Continental Gin Co. v. De Bord.

HARDY, J.   This was an action by defendant in error against plaintiff in error for conversion of certain property located in the town of Johnson, Ind. T.   Defendant in error, J. D. De Bord, had purchased certain machinery from plaintiff in error, the Continental Gin Company, and executed a chattel mortgage thereon, and had also executed a chattel mortgage upon buildings and machinery to the Laidlaw Lumber Company, and the Laidlaw Lumber Company had brought suit in the United States Court at Pauls Valley to foreclose its mortgage, and obtained a judgment of foreclosure, and caused an order of sale to issue thereon, and the property to be sold by the United States marshal.   Yerker E. Taylor bid in the property at the sale on behalf of the Laidlaw Lumber Company, which sale was never confirmed by the court. Thereafter attorneys for the Laidlaw Lumber Company and the agent of plaintiff in error entered into an agreement whereby the agent of plaintiff in error sold the property to Downs Bros., taking notes and mortgages to the Laidlaw Lumber Company and to plaintiff in error for their respective debts.   Defendant in error brought suit against the Continental Gin Company for conversion, and the jury returned a verdict in his favor, and the Continental Gin Company brings error.

There are 25 assignments of error set out in briefs of counsel, which are intended to present the various errors alleged to have occurred at the trial, but these assignments may properly be grouped together for convenient consideration under four propositions:   (1) That the court erred in giving and refusing to give instructions on the question of the character of notice necessary to charge the plaintiff in error with liability for the alleged conversion in this case; (2) that a portion of the property

for which damages are claimed was real estate, and therefore, was not the subject of conversion, and the defendant in error could not recover for the value of such property; (3) that the damages were excessive and given under the influence of passion and prejudice; (4) errors in the admission and rejection of evidence at the trial. Under this last head complaint is made of the action of the court in admitting evidence of the mental condition of defendant in error at the date of the mortgage executed by him to plaintiff in error on the 27th day of November, 1903, and alleged error in instructing the jury, after evidence had been admitted of the price at which the property had been sold by Taylor to Downs Bros., that they could not consider this evidence in arriving at the amount of recovery.

Under the first proposition it is urged that the plaintiff in error was never in possession of the property, but that it had a valid mortgage thereon, and was entitled to possession after default, by the terms of its mortgage, under the law then prevailing in the Indian Territory, and that plaintiff in error did not in any way change its relation to the property, but merely took the mortgage of Downs Bros. for its debt, acting in good faith, and that by reason thereof it is not guilty of conversion. In the former opinion in this case, found in 34 Okla. 66, 123 Pac. 159, the following language is used:

"In the case at bar, if the defendant, through its agent, knew that Taylor was a mortgagee in possession, then, of course, it was bound to know that he had no right to sell the property, except pursuant to the terms of the mortgage; and if, with this knowledge, it aided and abetted in the sale and received a part of the proceeds, it would be equally guilty of the conversion. If, on the other hand, it had no knowledge that Taylor was in pos-

session as a mortgagee, but thought in good faith that the foreclosure sale was valid, and that Taylor had a right to sell, and was entirely unconscious of the fact that it was aiding or abetting in the conversion of the property, then it would not be guilty of any breach of duty which it owed to the plaintiff, and therefore committed no tort."

The question of whether or not the plaintiff in error had knowledge of such facts was submitted to the jury, and the verdict of the jury resolved this question against it, and if the instructions given correctly state the law, and the evidence warranted the verdict of the jury, then no complaint could be urged by plaintiff in error.

The instructions given are criticized because the court charged the jury, in substance, that actual knowledge was not necessary, but that if Dury, the agent of plaintiff in error, had knowledge of such facts and circumstances as would put a reasonably prudent man upon inquiry, which inquiry would have led to the discovery of the fact that Taylor was a mortgagee in possession, then plaintiff in error would be charged with notice within the meaning of the law. The giving of this instruction was excepted to, and plaintiff in error asked the court to give an instruction to the effect that in order to find for the plaintiff in the case they must find from the evidence that Dury had actual knowledge that the sale by the sheriff had not been confirmed, and that such confirmation was necessary to make the sale valid, which instruction was refused by the court and exceptions saved. In the former opinion the court did not specifically state whether constructive notice would be sufficient, and it is now urged that the court, by the use of the language contained in the opinion, meant to say that actual knowledge was required. The interpretation placed upon the language of the court cannot by any reasonable rule of construction be deduced

from the former opinion, nor was such the law in the Indian Territory at the time of the matters and things complained of. The rule in Arkansas, as announced by the decisions of the Supreme Court, is that notice of facts and circumstances which would put a man of ordinary intelligence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. *Bland v. Fleeman,* 58 Ark. 84, 23 S. W. 4; *Miller v. Fraley, etc., Co.,* 23 Ark. 735; *Massie v. Enyart,* 33 Ark. 251; *Hamilton v. Fawlkes,* 16 Ark. 340.

The evidence in this case justifies the finding of the jury that Dury was in possession of sufficient facts which, if known to an ordinarily prudent man, would have caused inquiry, and which inquiry, if followed up, would have led to knowledge of the fact that Taylor was merely the agent of the Laidlaw Lumber Company, and was in possession of the property as mortgagee, and that the alleged sale had not been confirmed by the court, and the sufficiency of the evidence to justify this finding is not challenged. This being true, as held in the former opinion, when Dury, as the agent of the plaintiff in error, aided and abetted in the sale of the property and received a part of the proceeds, the plaintiff in error was guilty of conversion. This court has held in a number of cases that one is charged with notice who has knowledge of facts and circumstances sufficiently pertinent in character to enable a reasonably cautious and prudent man to investigate and ascertain the real facts. *Cooper v. Flesner et al.,* 24 Okla. 47, 103 Pac. 1016; *Herbert v. Wagg et al.,* 27 Okla. 674, 117 Pac. 209; *Creek L. & Imp. Co. v. Davis,* 28 Okla. 579, 115 Pac. 468; *Brooks v. Reynolds et al.,* 37 Okla. 767, 132 Pac. 1091.

It follows that there was no error in the giving of the instructions complained of, nor in the refusal of the court to give the instruction requested.

Under the second proposition it is urged that a portion of the property for which damages are claimed is real estate, and not the subject of conversion. A portion of the property, as appears from the evidence, was buildings situated on certain lots and machinery in the buildings, consisting of boilers, engines, gin stands, and other machinery usually contained in a gin of this character; and it is claimed that, because the buildings were attached to the land and the engines and boilers were affixed thereto in the usual manner, same constituted a part of the real estate, and was not the subject of conversion, and that plaintiff in error could not be held liable in this action. The defendant in error insists that all of the property was personalty, and that the defendant in error at no time owned the land upon which same was situated, the title thereto being in the Choctaw and Chickasaw Nations, and that as between the parties hereto, the same having been treated as personal property, it would be deemed to have been constructively severed from the real estate, if it had ever constituted a part thereof, and the action would lie.

While it is ordinarily true that buildings attached to the soil and machinery placed therein which are affixed to the buildings become a part of the real estate, as held by the Supreme Court of Oklahoma Territory in *Great Western Mfg. Co. v. Bathgate et al.*, 15 Okla. 87, 79 Pac. 903, yet the parties by their agreement may treat the property as personalty, and as between the parties this agreement would constitute a constructive severance thereof, and the property may be the subject of conversion, for which action will lie. In *Lawton P. B. & Tile Co. et al. v.*

*Ross-Kellar T. P. B. Mach. Co. et al.*, 33 Okla. 59, 124 Pac. 43, it was held that certain machinery sold to plaintiff in error therein under a contract reserving the title in the vendor was personal property, and replevin would lie for the possession thereof. In the course of the opinion Mr. Justice Kane used the following language:

"It is well settled that chattels may be annexed to real estate and still retain the character of personal property. Of the various circumstances which may determine whether in any case this character is or is not retained, the intention with which they are annexed is one; and, if the intention is that they shall not by annexation become a part of the freehold, as a general rule, they will not. The limitation to this is where the subject or mode of annexation is such that the attributes of personal property cannot be predicated of the thing in controversy, as where the property could not be removed without practically destroying it, or where it, or part of it, is essential to the support of that to which it is attached."

The rule is stated thus in 19 Cyc. 1070, 1071:

"After property has become realty it is said that it may become personalty by force of the agreement of the parties in interest. The cases on the subject are not numerous. It is said that the mere giving of a chattel mortgage on a fixture works constructive severance and makes it personal property."

See, also, *Manwaring v. Jenison*, 61 Mich. 117, 27 N. W. 899; *Johnston v. Philadelphia Mfg. Co.*, 129 Ala. 515, 30 South. 515, 87 Am. St. Rep. 75; *Badger v. Batavia Paper Mfg. Co.*, 70 Ill. 302; *Straw v. Straw*, 70 Vt. 240, 39 Atl. 1095; *Durkee v. Powell*, 75 App. Div. 176, 77 N. Y. Supp. 368; *Myrick v. Bill et al.*, 3 Dak. 284, 17 N. W. 268.

In *Straw v. Straw, supra*, A. R. Straw brought trover against John Straw for a water wheel and main shafting connected with the machinery in a starch factory which

had been reserved in a conveyance of the mill, but had not been removed therefrom, and the defendant refused to deliver the same upon demand. It was held that trover would lie, and that the acts amounted to conversion. In *Badger v. Batavia Paper Mfg. Co., supra,* it was held, where the assignee of a chattel mortgage upon a rotary boiler after maturity of the debt attempted to reduce the same to possession in accordance with the provisions of the mortgage, and was forbidden to do so by the party in possession who had succeeded to the title to the real estate upon which the boiler was situated, that this would constitute conversion of the boiler so as to enable the assignee of the mortgage to maintain trover without first making a formal demand for it. In *Manwaring v. Jennison, supra,* trespass was maintained for conversion of two steam boilers, one smokestack, one steam engine, one stave-cutting machine, and one machine for dressing and circle heading, which had been installed in a stave and heading mill, which machines had been securely bolted down upon the floor and through the timbers below the floor, and securely fastened.

In the case at bar the buildings were on lots in the town of Johnson, which was situated within the limits of the Chickasaw Nation, at a time when the title to the lots was still in the nation, and same had not been acquired by the owner of the buildings. This was in accordance with the universal custom which at that time prevailed in the Indian Territory, and which was recognized by numerous decisions of the Court of Appeals of that territory *(Kelly v. Johnson,* 1 Ind. T. 184, 39 S. W. 352; *Walker Trading Co. v. Grady Trading Co.,* 1 Ind. T. 191, 39 S. W. 354; *Morrow v. Burney,* 2 Ind. T. 440, 51 S. W. 1078; *Stone et al. v. Tharker et al.,* 3 Ind. T. 737, 62 S. W. 70; *Ellis v.*

*Fitzpatrick,* 3 Ind. T. 656, 64 S. W. 567; *Wilhite v. Coombs,* 5 Ind. T. 354, 82 S. W. 773), and has also been recognized by this court in the following decision: *Trueblood v. Johnson,* 41 Okla. 670, 139 Pac. 957. The parties have treated the property as personalty, as shown by the execution of a chattel mortgage thereon to plaintiff in error, and by the execution of mortgages to others, and by the execution and delivery of a bill of sale thereto by Taylor at the time of the sale to Downs Bros., at the request of Dury, and by the severance and removal of at least a part thereof, and at no time do they appear to have treated it as real estate, unless it be at the time the second mortgage to plaintiff in error was executed, by De Bord, on November 27, 1903, the execution of which mortgage was denied by De Bord. We think, under the circumstances of this case, this course of conduct amounted to a constructive severance of the property from the real estate, and a conversion thereof into personalty as between the parties hereto, and that the wrongful sale thereof by Dury under the circumstances as found by the jury was a conversion of said property, for which defendant in error would be entitled to recover damages.

Under the third proposition it is urged that the damages are excessive and appear to have been given under the influence of passion and prejudice. The verdict of the jury was for $1,480.75, which amount was arrived at in accordance with the instructions of the court, by deducting the debt of plaintiff in error, and the verdict of the jury represents the value of the property as found by them after deducting said amount. The contention that this verdict is excessive and apparently given under the influence of passion and prejudice cannot be sustained. The evidence offered by defendant in error amply supports

the findings of the jury. He testified that the reasonable value of the property in the possession of Downs Bros., exclusive of the value of the lots upon which same was situated, was $7,000, or more, and other witnesses who were familiar with the property testified as to its value, and, while no witness other than the defendant in error testified as to the value of every item, yet the evidence shows the combined value of all the property as testified to by witnesses for the defendant in error to be equal to or greater than the amount found by the jury, and the proof also shows that during the fall of 190— more than $700 worth of new material went into the plant by way of repairs. Chas. Dury, one of the witnesses, who was a ginman and salesman of 30 years' experience, and who made the sale to Downs Bros., on behalf of plaintiff in error, testified very fully as to the character and value of the machinery and the plant, except that he was not able to place a value upon the buildings. The plaintiff in error also offered other testimony as to the value of the property, and from the evidence thus given the jury were justified in reaching the conclusion they did, and, in our opinion, the evidence preponderates in favor of the verdict.

Another reason why we cannot say that the verdict is excessive is that a portion of the property alleged to have been converted was not embraced in the mortgage to the Laidlaw Lumber Company or the first mortgage to plaintiff in error, and is only covered by the mortgage of date of November 27, 1903, and which mortgage it is claimed by defendant in error was executed at a time when he was mentally deranged and wholly incapable of understanding the nature of the instrument and its probable consequences. This issue was submitted to the jury, and we cannot say that the jury did not find this mort-

gage to be void, and the evidence tends to show that the property covered by this mortgage would exceed in value the sum fixed by the jury in their verdict. As to the property embraced in this mortgage, if it were found to be void, the plaintiff in error would not be entitled to offset its debt against the value thereof, except such items as were covered by the first mortgage, for the reason that property wrongfully taken without the consent of the owner may be recovered back, and the fact that the owner thereof was indebted to the wrongdoer is not a defense. *Ray v. Navarre et al., ante,* 147 Pac. 1019; *Murphy v. Virgin,* 47 Neb. 692, 66 N. W. 652.

Under the fourth proposition error is alleged in the admission of evidence as to the mental condition of defendant in error during a part of the years 1903 and 1904, and in giving and refusing to give instructions relating thereto. The evidence complained of was admitted for the purpose of avoiding the mortgage dated November 27, 1903, and the court instructed the jury that, if they believed from the evidence that said mortgage was made for the purpose of securing the indebtedness to the Continental Gin Company, and that at the time of the execution thereof De Bord was suffering from some mental derangement which rendered him incapable of understanding the nature and probable consequences of such mortgage, the same would be of no binding force. This mortgage covered all the property in controversy, including a lot of property not embraced in the other mortgage to plaintiff in error, nor in that to the Laidlaw Lumber Company, and, it is admitted by Dury, was executed without any additional consideration therefor, not even an extension of the original indebtedness being given at the time, and under this mortgage plaintiff in error asserts its right to

the property embraced therein as a justification of its acts, and insists that by this mortgage the property was treated as real estate, and that conversion of the same could not be committed, which claim is met by the contention that such mortgage is void for want of capacity to make same at the date of its execution; and it was for the purpose of showing this condition of mind of the defendant in error that the evidence was admitted, and in this we think there was no error. At the time the said mortgage was given, the laws of Arkansas were in force in the Indian Territory, and of course its validity must be determined by the laws then in force. Under the decisions of that state the degree of proof which is necessary to invalidate a man's deed or contract on the ground of insanity or mental derangement is that proof which will fairly show his inability to exercise a reasonable judgment in regard to the matter involved in the conveyance. The fact that the party was a monomaniac and possessed of insane delusions on some subjects not connected with the conveyance or matters out of which it grew is not sufficient to invalidate the instrument. To have that effect, the mental derangement must be such as to disqualify him from intelligently comprehending and acting upon the business affairs out of which the instrument grew, and to prevent him from understanding the nature and consequences of his acts; and when the proof is of this character, the instrument is absolutely void and of no binding effect upon the person executing same (*Eubanks v. Dobbs,* 4 Ark. 173; *Henry, Adm'r, v. Fine,* 23 Ark. 417; *George v. St. L., I. M. & S. Ry. Co.,* 34 Ark. 613; *Seawel v. Dirst,* 70 Ark. 166, 66 S. W. 1058) ; and it seems to be well settled that, subject to certain limitations, a contract entered into by a person who is at the time so insane as to be incapable of understanding what he is doing is at

least voidable, at his option (22 Cyc. 1194; 16 Am. & Eng. Ency. of Law [2d Ed.] 624; Buswell on Insanity, sec. 270; Bishop on Contracts, 962-964; *Jacks v. Estee*, 139 Cal. 507, 73 Pac. 247; *Burgess v. Pollack*, 53 Iowa, 273, 5 N. W. 179, 36 Am. Rep. 218; *Concord v. Rumney*, 45 N. H. 438; *Aldrich v. Bailey*, 132 N. Y. 85, 30 N. E. 264; *Kingbury v. Whitaker*, 32 La. Ann. 1055, 36 Am. Rep. 278; *Banks v. Goodfellow*, L. R. vol. 5, Q. B. C. 549).

The instruction complained of correctly stated the law of the case, and if at the time the second mortgage was executed by defendant in error his mind was so deranged that he was incapable of understanding the nature and probable consequences of such mortgage, then it would be of no binding force between the parties hereto, and he would have the right to disaffirm same, and, no consideration having been received by defendant in error, none would have to be returned upon a disaffirmance thereof, and it would constitute no justification for the acts of the plaintiff in error, and it was proper to admit evidence bearing upon that issue, and to correctly instruct the jury as to the law thereof.

Nor do we think there was error in refusing to give the sixth requested instruction, to the effect that the jury could only consider this evidence in determining whether defendant in error understood the contents of the mortgage to plaintiff in error dated November 27, 1903. This would have limited the consideration of such testimony within too narrow a compass. The purpose of the evidence, as we have seen, was to show whether defendant in error was suffering from such mental derangement as could disqualify him from intelligently comprehending and acting upon the business affairs out of which the instrument grew, and prevent him from understanding the

nature and consequences of his acts. Had the court limited the consideration of the evidence as requested by this instruction, the same would have been prejudicial restriction thereof against defendant in error. Neither do we think it can be maintained that the jury were prejudiced against plaintiff in error, and that the verdict is excessive by reason of the failure of the court to limit their consideration of such evidence as requested. We have already seen that under the evidence the verdict was justified as to actual damages, and, there being no punitive damages asked or allowed, no prejudice to plaintiff in error is apparent.

Error is also alleged in the action of the court in his instructions wherein he limited the consideration of certain evidence at the trial concerning the sale to Downs Bros. to the question of good faith on the part of the plaintiff in error in making the sale, and it is contended that, this evidence having been admitted, it was competent to be considered by the jury as evidence of the value of the property at the time of the alleged conversion, and that the court committed reversible error in giving the instruction complained of. It has already been seen that witnesses for both parties testified as to the value of the property, and were cross-examined with reference thereto, and that the witness Dury, who testified to the terms of the sale to Downs Bros., and who gave the testimony affected by said instruction, was permitted to give to the jury his estimate of the value of the property, and did so, except as to the buildings. It may be conceded that the contention that evidence as to the price at which property has been sold when the sale is made under ordinary circumstances is admissible to show its value in an action for conversion, when the sale is not too remote in time, is

sustained by the following cases cited by counsel: Jones on Evidence, sec. 168; *Richardson v. Perry,* 10 Okla. 32, 61 Pac. 587; *Spring Valley Waterworks v. San Francisco* (C. C.) 192 Fed. 137; *Navarre Hotel & Imp. Co. v. Am. App. Co.,* 156 App. Div. 795, 142 N. Y. Supp. 89; *Schall v. Northland Motor Car Co.,* 123 Minn. 214, 143 N. W. 357; *Gate City Term. Co. v. Thrower,* 136 Ga. 456, 71 S. E. 903; *Halstead v. Vandalia Rld. Co.,* 48 Ind. App. 96, 95 N. E. 439; *Moore v. Lachmund,* 59 Or. 565, 117 Pac. 1124; *Parmenter v. Fitzpatrick,* 135 N. Y. 190, 31 N. E. 1032; *In re Johnston,* 144 N. Y. 563, 39 N. E. 643; *Farnsworth v. Miller* (N. J. Sup.) 60 Atl. 1100; *Denton v. Smith,* 61 Mich. 433, 28 N. W. 160; *Kendrick v. Beard,* 90 Mich. 589, 51 N. W. 645; *Norton v. Willis,* 73 Me. 580. Counsel for plaintiff in error, in their brief (page 88), define market value to be "what property will reasonably sell for under ordinary circumstances," and upon this definition insist that the jury should have been permitted to consider said evidence in determining the amount of defendant in error's recovery. Under this definition and the authorities cited, the action of the court was not error, for the circumstances under which the sale occurred were not of such a nature as usually are attendant upon a sale of this character. It appears that there were mortgages to plaintiff in error and the Laidlaw Lumber Company, and also another mortgage to the Southern Trading Company, the priority of which as between it and the mortgage of plaintiff in error is not apparent. It further appears that De Bord had been seriously hurt, and was at the time out of the territory, it being reported in the neighborhood that he was demented, Dury having heard this report, and a rumor being current that he was dead. Only one other bid had been made upon the property, and at the time of the sale additional machinery was fur-

nished by the Continental Gin Company to Downs Bros., which, in connection with the property sued for, was all sold for one price, and no separate value placed upon the extra machinery and materials, nor upon the property covered by the mortgage in the contract of sale, and it would have been a matter of conjecture for the jury to determine what price was actually paid for the property converted, and the fact that the notes had not been paid could not have been material to any issue in the case. The evidence could have been of little or no practical assistance to the jury in determining the question submitted to them, and no substantial prejudice could have resulted therefrom, and therefore, even if the evidence were admissible, the action of the court thereon would not constitute reversible error.

The judgment of the court below is, therefore, affirmed.

All the Justices concur.