ANDREW B. WOODS v. GAAR, SCOTT & CO. (A CORPORATION).

*Chattel mortgage—Right of possession—Insecurity clause—Trover by mortgagor—Damages.*

| 93 | 143 |
| 99 | 302 |
| 93 | 143 |
| 113 | 129 |
| 93 | 143 |
| e122 | 111 |
| 93 | 143 |
| 127 | 60 |

1. The right of a mortgagee to take possession of the mortgaged property under the insecurity clause in the mortgage is not a mere option, to be arbitrarily exercised, without reference to changed conditions or the conduct of the mortgagor.

2. The question for the jury in such a case is not whether the mortgagee was in *fact* insecure, or whether the reason given by him for so deeming himself is regarded by them as sufficient, but rather the good faith of the mortgagee in acting upon such reason.

3. Where a mortgagor is entitled to the possession of the mortgaged property until condition broken, subject to the right of the mortgagee to take possession under the insecurity clause in the mortgage, he can maintain trover in case of the arbitrary enforcement of said clause by the mortgagee.

4. The agent of a mortgagee, who sold the property, to secure the payment of the purchase price of which the mortgage was given, to the mortgagor, and who bid it in for the mortgagee on the foreclosure of the mortgage, and afterwards sold it on credit, may testify to the price he sold it for on the last sale, in a suit by the mortgagor to recover the value of the property.

5. The measure of damages in trover is the value of the property at the time of the conversion, with interest thereon, unless special damages are alleged and proven.

6. The special damages recoverable in an action of trover are such as are the immediate consequences of the deprivation of the property.

Error to Kent. (Adsit, J.) Argued June 10, 1892. Decided October 4, 1892.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*Clapperton & Hine* (*Arthur C. Denison,* of counsel), for appellant.

*J. H. Tatem,* for plaintiff.

McGRATH, J. This is trover by mortgagor against mortgagee for the value of goods taken possession of and sold under the insecurity clause in the mortgage.

April 16, 1889, plaintiff bought of defendant a steam threshing rig, consisting of engine and separator, for $1,800. Four hundred dollars was paid down, and the balance, represented by six notes, two of which were payable October 1 and December 1, 1889, two October 1 and December 1, 1890, and two October 1 and December 1, 1891, was secured by a real-estate mortgage of $400, and a chattel mortgage upon the threshing rig. The first two notes, amounting to $508, were not paid at maturity, but, after some negotiations, on January 14, 1890, plaintiff executed a deed to defendant of the land covered by the real-estate mortgage. Defendant surrendered one of the two matured

notes, and upon the other made the following indorsement:

"It is hereby agreed that, if Andrew B. Woods pays to Gaar, Scott & Co., or its agent, within twenty days from date, $100.00, to be applied on its note against him due next fall, December 1, 1890, this note shall be considered paid, and shall be returned to him."     . ·

The $100 was paid within the time, and the second note was surrendered. On May 10 following defendant took possession of the engine and separator, advertised and sold them, itself bidding them in at $100, and subsequently selling them. There was nothing due upon the mortgage at the time defendant took possession, nor was it claimed that there was any change in the circumstances of the mortgagor, or that there had been any breach of any of the conditions of the mortgage. The mortgage contained the following clause:

"But in case default shall be made in the payment of any of said notes, or in the interest thereon, or any part thereof, at the times above limited for the payment of the same, or if the said party of the second part *shall at any time deem itself insecure,* * * * it shall and may be lawful for the said party of the second part, its successors or assigns, or its authorized agent, *to enter upon the premises of said parties of the first part,* * * * *and take possession thereof, and remove the same to any place within the State of Michigan,* and to sell and dispose of the same for the best price or prices that can be obtained therefor, at private sale or at public vendue."

The learned circuit judge instructed the jury that if they found that the defendant acted in good faith, and had good reason to deem itself insecure, plaintiff could not recover; that it was for them to say, under all of the circumstances, whether or not defendant *did have good reason to think,* and did think, that it was insecure at the time; that if, on the contrary, they should find that the defendant did not have reason to think, and did not

think, that it was insecure, and that, after having got all
that it could from the plaintiff, it fraudulently and arbi-
trarily, *without good and sufficient cause*, took advantage
of the plaintiff's necessities, seized the property, and sold
it before the debt (to the payment of which it was pledged)
became due, that would be a conversion of the property,
and the defendant would be liable for the value of the
machine, less the amount owing by the plaintiff to the
defendant at that time; that, if they found that defendant
obtained this deed and money by falsely leading the plaint-
iff to believe that, by giving the deed and paying the $100,
it would allow him to keep the possession of the machine
during the season, that would be an evidence of bad faith
on the part of the defendant at the time of the seizure
and sale; that they were to consider the facts on which the
defendant claimed it was acting in determining that it
was insecure, and determine the good or bad faith of the
defendant in seizing this property in May, 1890,—

"Whether such facts constituted an honest reason for
deeming itself insecure in fact; for I charge you that its
action must have been based on an honest and *bona fide*
belief that it was insecure. You are not to question its
judgment, however erroneous it may have been. If it was
based on an honest belief, that is sufficient. *  *  * If
you find that at the time he [the agent] had concluded
and led the plaintiff to believe that he should not be dis-
turbed in the possession of the property before a default
in payment to become due, which could not occur, as I
have already stated, until October 1, and if you find there
was nothing which came to his knowledge after that time
which he did not then know, *to justify the seizure*, the
circumstances would tend to prove bad faith. If, on the
contrary, he learned new facts after that time *sufficient to
justify the act of seizure* and sale, taken together with
what he then knew, they would have a strong tendency
to prove good faith and an honest conclusion that the
defendant then deemed itself insecure, and lawfully exer-
cised the right given in the mortgage to seize and sell the
machine."

These instructions were erroneous, in so far as they submitted to the jury the abstract question as to the sufficiency of the reason given by defendant for deeming itself insecure. It is not necessary that it appear that the mortgagee was in fact insecure. The mortgage vests in the mortgagee a certain discretion, of which the jury could not divest it, so long as that discretion was honestly exercised. While it is true that defendant could not act capriciously, and must have reasons for deeming itself insecure, yet, when the mortgagee acts in good faith, its right cannot rest solely upon the question of the sufficiency or insufficiency of the reason assigned. The real question for the jury, in cases where a reason is given, is the good faith of the mortgagee. A reason may not strike the jury as a good reason, yet the mortgagee may act in entire good faith, and in such case there can be no liability. If the mortgagee had reason to believe that it was insecure, and did so believe, acting in good faith, it was justified in taking possession, even though the reason may not be regarded by the jury as a sufficient one. The jury may take into consideration all the facts, circumstances, and conditions, together with the reasons given or the grounds assigned for the apprehension, in determining the question of good faith. These clauses are inserted with reference to possible changes in conditions or circumstances, or new developments affecting the mortgagee's security. The right to take possession and at once proceed to sell plaintiff's property was not a mere option, to be arbitrarily exercised, without reference to changed conditions or the conduct of the mortgagor. A vendor of personal property will not be allowed to sell his property, receive a large payment down, take a mortgage back, and thereafter capriciously deem himself insecure and take possession of the property. In the present case the amount due upon the mortgage in January had been paid, and plaintiff had advanced $100

upon the installment maturing in December following, and, unless after that time there were new developments or changed circumstances which led defendant, acting in good faith, to believe that it was insecure, and it did so believe, then defendant was liable.

It is next contended that, by the terms of the mortgage, the right of possession was in the mortgagee; hence trover is not maintainable. The mortgage itself recognizes the possession of the mortgagor, and the provision giving the mortgagee the right to take possession in certain contingencies is inconsistent with the right of possession in the absence of these contingencies. *Eggleston v. Munday*, 4 Mich. 295, is grounded upon the theory, long since exploded, that a chattel mortgage passed the title. *Cadwell v. Pray*, 41 Mich. 307. The mortgagor, under this form of mortgage, is entitled to possession until condition is broken, subject to the proper exercise of the discretion given to the mortgagee.

Objection was made to testimony respecting the assurances given at the time of the adjustment in January, regarding the possession of the property, on the ground that the indorsement on the note contained the agreement, and that agreement could not be varied by parol. The agreement evidenced by the writing referred solely to the surrender of the note upon which it was indorsed. It was not pretended that the payment of the $100 was the sole consideration of the surrender of the note, or that the memorandum recited the entire transaction. No attempt was made to vary the expressed understanding that that note was not to be surrendered until the $100 was paid. The transaction of that date, which had already been gone into, was the execution of the deed of the farm by plaintiff, in consideration of which defendant was to surrender the two notes. The plaintiff claimed that, as an inducement to make the transfer and make the advance payment,

he was assured that he would not be molested. The note was, in fact, paid by the transfer, and was held simply to insure the payment of the $100. There was no error in the admission of the testimony.

The value of the engine and separator at the time of the seizure was, of course, a question in controversy. Plaintiff called as a witness defendant's agent, who testified that he had sold the machinery to plaintiff, and bid it in for defendant after its seizure, and afterwards sold it. He was allowed to testify, under objection, as to the price for which he sold it, viz., $1,400. It had already appeared that this was a time sale, upon notes. The testimony was competent, as bearing upon the value.

The court instructed the jury that the plaintiff would be entitled to the value of the machinery, and the value of the right of possession until October 1, 1890, when the first of the reserved payments would become due, less the amount due on the mortgage. In this we think the court erred. The measure of damages in trover is the value of the property at the time of conversion, with the interest, unless special damages are alleged and proven. Special damages must be such as are the immediate consequences of the deprivation. Here the property was idle at the time of the taking. Months elapsed before any contemplated use could be made of it,—ample time within which the property could have been replaced.

For the errors named the judgment must be reversed, and a new trial ordered.

The other Justices concurred.