## WETTLIN ET AL v. JONES ET AL[*]

(No. 1175; March 31, 1925; 234 Pac. 515)

(Rehearing Denied; 236 Pac. 247)

CHATTEL MORTGAGES—DEFAULT BY COLLUSION OF MORTGAGEE—CONVERSION—FORECLOSURE—APPEAL AND ERROR—COSTS.

1. Notwithstanding a mortgage contained a clause enabling mortgagee to take possession of property in case he felt insecure, if default or conditions that caused mortgagee to feel insecure were brought about by him in collusion or conspiracy with third person, foreclosure following default was an unlawful act.

2. It is a fundamental axiom in law that no man can profit by his own wrong.

3. As mortgagee is guilty of conversion where he takes possession of mortgaged property before he is entitled to do so under the mortgage, and sells it, all participating therein with him are equally guilty of tort.

4. To warrant mortgagee in taking possession of mortgaged chattels and selling them under mortgage authorizing him to do so whenever he feels himself insecure, he must act in good faith.

5. Mortgagee, who in collusion with another with intent to defraud mortgagor takes possession and sells property under clause in mortgage authorizing him to do so whenever he feels himself insecure, does not act in good faith.

6. Payment of an installment due on a mortgage is excused, if it is prevented by acts of mortgagee.

7. Payment of installment due on a mortgage is excused, if it is prevented by act of mortgagee in combination with third persons.

8. Evidence *held* to warrant finding of conspiracy between . mortgagee and third person to foreclose chattel mortgage on laundry equipment, and to deprive mortgagors, absent from state, of their interest therein.

9. It is not the function of the Supreme Court to pass on credibility of witnesses.

10. Mortgagors of chattel property are not compelled to receive back property which had been once converted by mortgagee.

11. Supreme Court having certified, in order affirming judgment on direct appeal, that there was reasonable cause for appeal, Comp. St. 1920, § 6372, authorizing allowance of attorney's fees and penalty to defendant in error on affirmance, is inoperative, if it is applicable to direct appeal under Laws 1917, c. 32.

## ON PETITION FOR REHEARING

12. Petition for rehearing, mailed on last day of period allowed for filing, but too late to be received by clerk of Supreme Court within such period, is not entitled to consideration.

13. Mistaken assumption, that statements made by appellant to respondent were not denied by latter, *held* not to have led Supreme Court to sustain sufficiency of evidence to support judgment.

*NOTE—See Headnotes—(1) 11 C. J. p. 590 (1926 Anno.); (2) 21 C. J. p. 183; (3) 11 C. J. pp. 589, 592; (4) 11 C. J. p. 556; (5)

11 C. J. p. 556; (6) 11 C. J. p. 697 (1926 Anno.); 13 C. J. p. 647; (7) 11 C. J. p. 697 (1926 Anno.); (8) 11 C. J. p. 596; (9) 4 C. J. p. 844; (10) 11 C. J. p. 594(1926 Anno.); (11) 15 C. J. p. 282; (12) 4 C. J. p. 637; 15 C. J. p. 282; (13) 4 C. J. p. 624.

APPEAL from District Court, Fremont County; CYRUS O. BROWN, Judge.

Action by Herbert J. Wettlin and another against Squier Jones and another. There was judgment for plaintiffs and defendants appeal.

*B. S. Cromer, A. C. Allen, John Dillon* and *G. J. Christie* for appellants.

Defendant Jones was not an agent of respondents and under no obligation to give them notice other than what is required by the mortgage, 19 R. C. L. 603. The mortgage was legally foreclosed, 4629-31 C. S. An act which if committed by a single person is also lawful if committed by a combination, 12 C. J. 582. A conspiracy is a combination between two or more persons to do an unlawful act, or a lawful act by unlawful means, 12 C. J. 541; no conspiracy can exist where two or more persons combine to do a lawful act in a lawful manner. The foreclosure notice was published in a paper of general circulation in Fremont County. No notice other than as required by law or contained in the instrument was necessary; a lawful act is lawful no matter how many unite to do it; Trans. Co. v. Standard Oil Co., 56 L. R. A. 804; what one may do lawfully two or more may join in doing, R. R. Co. v. Schaffer, 62 L. R. A. 934; Cleveland v. Anderson, 5 L. R. A. (N. S. 136); 18 L. R. A. (N. S.) 704; to sustain an action for conspiracy there must be allegations and proof of an act, which if done by one alone would at common law constitute an action on the case; Sleeper v. Baker, 39 L. R. A. (N. S.) 464; 64 L. R. A. 260. The burden was on plaintiffs to prove a combination to do an unlawful act, or a lawful act by unlawful means resulting in damage to plaintiffs, 12 C. J. 632.

*M. C. Burk* for respondents.

There was no authority to foreclose before maturity of the debt. Both Jones and Vollmer were liable for conversion; in action for conspiracy, the damage is the gist of the action, 5 R. C. L. 1091; 3 Encyc. Ev. 407. Proof of conspiracy is generally circumstantial, slight evidence of collusion is sufficient, 3 Encyc. Ev. 427; a mortgagee exercising power of sale must act in good faith; an unlawful foreclosure is conversion creating liability for damages equal to value of property at the time of conversion, 5 R. C. L. 462-68; less the mortgage debt with interest to date of judgment, 4 Suth. Dam. 4214. Assignee of lease who assumes the covenants is responsible for breach, 4 Page on Conts. 4006; Woodland Oil Co. v. Crawford, 55 O. St. 161, 34 L. R. A. 62; if assignee fails to perform the adverse party may enforce the original contract. The evidence amply sustains the judgment and findings. Jones was a trespasser and the sale of the property constituted conversion.

*B. S. Cromer, A. C. Allen, John Dillon* and *G. J. Christie* in reply.

The evidence established publication in a newspaper of general circulation. The burden of proof was on plaintiff, 12 C. J. 630. The note was payable in installments; the notation as to monthly payments being in writing, 3950 C. S. Mortgagors made default and foreclosure was not a trespass, 11 C. J. p. 556; 11 Cyc. 697; Fleming v. Thorpe, 19 L. R. A. 915; Clark v. Baker, 9 Pac. 911; Maddox v. Wyman, 28 Pac. 838. When property is subject to a lien in favor of defendant tender of the amount due the lien holder is necessary before bringing action of trover; 26 R. C. L. 1129; Mullen v. Quinlan, 24 L. R. A. (N. S.) 511; this plaintiffs failed to do. There was default of the note and the foreclosure notice was in accordance with the statute; 4712 C. S. It was unnecessary for notice to state that mortgagee felt unsafe or insecure, 11 C. J. 706.

BLUME, Justice.

Herbert G. Wettlin and Elizabeth Wettlin, plaintiffs below and respondents here, recovered judgment for $3357.16 in the district court of Fremont County against Squier Jones and E. E. Vollmer, defendants below and appellants here, as damages for fraudulently depriving plaintiffs of their interest in certain personal property. The evidence on the part of plaintiffs and respondents tends to show: On August 24, 1921, respondents were the owners of certain laundry equipment in the town of Riverton, Wyoming, in good condition and of the value then and later in the year of $5000. On that day they executed to the appellant Squier Jones a chattel mortgage to secure the payment of a note for $2057.23 with interest, payable on or before April 15th, 1923, but further providing for the payment on the note of $100 per month beginning August 15, 1921. Said laundry equipment was located in a building owned by said Squier Jones, and a rental of $50.00 was then and thereafter to be paid for the use and occupation of said building. On August 25th, 1921, respondents entered into an agreement with one Louis Dudeck and Mrs. Dudeck, leasing said laundry equipment to the latter till April 1st, 1922, at an agreed rental of $200 per month, in addition to the rent to be paid for the use and occupation of said building, under stipulation on the part of said Dudecks to deposit in the Riverton State Bank, on the 15th of each month, the sum of $100 to the credit of said Jones, to meet the payments due each month on said note, and $100 a month for the benefit of respondents; also to pay the monthly rental of $50.00 for the use and occupation of said building. Shortly afterwards respondents left Wyoming for New Jersey, leaving their address, where mail would reach them, with said bank as well as at the postoffice at Riverton, and with an agreement on the part of Jones, as testified to by Mrs. Wettlin, but denied by Jones, to notify respondents in case the payments under the contract with the Dudecks should not be

made when due. Mrs. Wettlin, according to her testimony, also had a talk with Jones before her departure as to the sale of said laundry equipment, at which time Jones suggested the name of the appellant Vollmer as a prospective purchaser.

The payment due August 15, 1921, as well as the payments due in the months of September and October, 1921, under said contracts with the Dudecks, were duly made. About November 1st, 1921, the appellant Vollmer came to Riverton and opened up negotiations with the Dudecks for the purchase of said laundry equipment through an agent, who seems to have continued as such till the completion of the purchase, and who, as some of the testimony shows, stated to the Dudecks that, unless they would sell, Vollmer would start another laundry and "freeze" them out. Vollmer, according to his testimony, made but a cursory examination of the property before taking it over, and on November 4, 1921, entered into a written agreement with the Dudecks whereby the latter turned the lease to the equipment over to Vollmer, the latter contracting to "carry out and perform all the terms and conditions" named in the lease. Jones consented to the transfer in writing. The Dudecks received no compensation for turning the equipment over, other than Vollmer's agreement to carry out the terms of the lease. The property was delivered to Vollmer on November 7, 1921. He refused to make the payments that fell due on November 15, 1921. Jones almost immediately thereafter proceeded to foreclose his mortgage, advertising the property for sale. The first notice was published on November 25, 1921. The paper selected for the publication of the notice was the Dubois Courier, published weekly at Dubois, a small country town some eighty miles or more distant from Riverton, and nearly that far from a railroad. But the paper was actually printed on the printing press of the newspaper published at Riverton. The paper so selected has a total circulation of 200 to 300, from three to five copies thereof

being received by parties in Riverton. The sale was held at Riverton, pursuant to notice on December 24, 1921, and sold to Vollmer for $1900, he being the only bona fide bidder present. Of this amount $270 only was paid in cash, in order to pay $170 expenses incident to the sale aforesaid and $100 on the mortgage. Vollmer gave a note and mortgage on said equipment for the balance of the purchase price, namely, for $1630.00, and thereafter treated the property as his own. After the transfer of the lease by the Dudecks was made on November 4, 1921, Vollmer, upon his own suggestion, continued to carry on the business in the name of Mrs. Dudeck, as it had been theretofore conducted, even having new and necessary stationery printed in her name. The Dudecks apparently were employed by Vollmer and worked in the laundry till after the sale under the mortgage aforesaid, when one or both lost their employment. Mrs. Dudeck appears to have worried over the fact that the Wettlins had not been notified of the transfer to Vollmer. The latter, she testified, did not want them to know anything about it till he got his ''hands on the lease;'' that they ''would find out in time.'' When she spoke to him about helping her write a letter, he stated that he would ''take care of it,'' but never did. Dudeck finally wrote on January 15, 1922. Nor did Jones communicate with the Wettlins in the meantime, and made no effort to do so. But on February 1, 1922, he wrote them a letter to 1108 3rd Ave., Asbury Park, N. J., duly received by them, stating that they had never paid all their ''insurance on the laundry machinery,'' that this would have to be taken care of at once, or suit started. A note for $109.65, to be signed by them, was enclosed. This letter—the only one written by Jones to the Wettlins—contained no information that the mortgage had been foreclosed as above mentioned. Mrs. Wettlin soon after returned to Riverton, and the action herein was commenced on March 11, 1922.

The action herein is that Jones and Vollmer entered into a conspiracy for the purpose of defrauding the Wettlins out of their interest in said laundry equipment and that the said equipment was acquired, the transactions herein mentioned subsequent thereto took place, and the foreclosure proceedings herein shown were had, pursuant to such conspiracy and intent to defraud. The first contention made on behalf of the appellants is that by reason of the non-payment of the installment due on November 15, 1921, a default existed in the terms of the mortgage; that the mortgage contained a clause enabling Jones to take possession of the property in case he felt himself insecure; that he had, by reason of said default, ample reason to feel insecure; that, accordingly, he had a lawful right to foreclose; that the foreclosure proceedings were regular, and that "what one may lawfully do singly, two or more may lawfully agree to do jointly." (12 C. J. 583). The conclusion drawn is, that defendants could not conspire to do a lawful act in a lawful manner. Assuming that to be the law, the conclusion must rest upon sound premises. It is a fundamental axiom in law that no man can profit by his own wrong. It has frequently been held that a mortgagee is guilty of conversion where he takes possession of the mortgaged property before he is entitled to do so under the terms of the mortgage and sells it. 11 C. J. 589; Jones, Chat. Mtgs. (5th Ed.) Sec. 437; Woods v. Gaar, Scott & Co., 93 Mich. 143, 53 N. W. 14; Ray v. Goings, 96 Ill. 361, 36 Am. Rep. 151; Broshier v. Tolleth, 31 Neb. 622, 48 N. W. 398; First Nat. Sav. Bank v. Sherman, 33 Idaho 343, 195 Pac. 630; Burton v. Randall, 4 Kan. App. 593, 46 Pac. 326; Johnston v. Robuck, 104 Ia. 523; 73 N. W. 1062; Fields v. Copeland, 121 Ala. 644, 26 So. 491. And all parties who participate therein are equally guilty of the tort. Burghen v. Purdy, 27 App. Div. 460, 50 N. Y. S. 546; Keables v. Christie, 47 Mich. 504, 11 N. W. 400; Continental Gin Co. v. De Bord, 34 Ok. 66, 123 Pac. 159; Continental Gin Co. v. De Bord, 49 Okl. 32, 150 Pac. 892; Da-

vidson v. Kolb, 95 Mich. 469, 55 N. W. 373; Smith v. Hurley, 29 R. I. 489, 72 Atl. 705. The courts are substantially, if not entirely, unanimous in holding that to warrant· a mortgagee in taking possession of mortgaged chattels and selling it under a clause in the mortgage authorizing him to do so whenever he feels himself insecure, he must at least act in good faith. (Note Ann. Cas. 1914 B. 1097-1101), and it can hardly be contended that a mortgagee who takes possession and sells the property through collusion with another with intent to defraud the mortgagor is acting in that manner. Payment of the installment due on ·the mortgage in question on November 15, 1921, was excused if it was prevented by the acts of the opposite party. 13 C. J. 647. The same thing is true, of course, if the prevention occurred through the acts of the opposite party in combination with others. If then, the default that occurred on that date, or the conditions that caused Jones to feel insecure, were brought about by the latter in collusion or conspiracy with Vollmer, no justifiable reason existed for the foreclosure and it was not a lawful act. We think, therefore, that if the facts relied on are true, the respondents had a cause of action.

This brings us to the only other contention made herein, namely,· that the judgment is not sustained by the evidence. Jones and Vollmer both denied any conspiracy, and explained their conduct to· be consistent with innocence. The agent of Vollmer denied that he had made any threats to the Dudecks about selling out. ·Vollmer himself claimed that he did not comply with his agreement to pay the installments due on November 15, 1921, because the business was not as represented and that the equipment was in bad shape generally. Jones testified that the enmity between him and the editor of the Riverton paper was the reason why the foreclosure notice was published in the Dubois paper. ˙ He attempted to explain his failure to notify the Wettlins by saying that he thought the latter had the right of redemption from the foreclosure sale

under the statute, though that is not a fact. Without attempting to set out the testimony for appellants in greater detail, suffice it to say that the court evidently gave it no credence, in view of the other facts and circumstances appearing in the evidence. It is not our function to pass upon the credibility of witnesses, and the only question before us is whether the judgment is supported by substantial evidence. The court no doubt thought that the arrival of Vollmer in Riverton was not altogether without the knowledge of Jones. On November 4th, 1921, the former solemnly agreed to carry out the contract between the Dudecks and the Wettlins. He took possession November 7. Within a week he refused to pay, notwithstanding the fact that he knew how disastrous that might be to Wettlins, who were in New Jersey, without knowledge of the facts and hence unable to protect themselves. He had no opportunity to investigate the amount of business done and the condition of the equipment, and his explanation for his action was no doubt deemed totally inadequate by the court. Then followed the almost immediate commencement of the foreclosure. Vollmer did not want the Wettlins to know anything of the transaction between him and the Dudecks, even continuing to conduct the business in the name of Mrs. Dudeck. Jones, too, though he had consented to the transfer of the equipment to Vollmer, knowing that non-payment by the latter would create a default in the terms of the mortgage, did not notify the Wettlins then or when the default occurred, though he knew or was able to obtain their address, as shown by his subsequent letter to them, and though he had promised, as Mrs. Wettlin, testified, that he would keep her advised of any default. There was, perhaps, no legal duty, even under the circumstances, for Jones to keep the Wettlins advised. But there was a moral duty. And while a mere moral duty cannot give rise to legal responsibility, the failure to perform it may have a tendency in helping to show the breach of a legal duty or responsibility. And

then comes the publication of the foreclosure notice in the Dubois paper, of which only three to five copies were delivered in Riverton. It may be conceded that the paper was such that legal notices might lawfully be published therein; but the law contemplates that publications shall be made so that interested people may see them, and it was certainly not in compliance with the spirit of the statute to publish such notice in a paper which would not, under ordinary conditions, furnish interested people the opportunity to see it. The publication in the manner shown in this case had at least, under the circumstances, a powerful tendency to show an intended secrecy concerning the transaction involved. No doubt the very explanation which Jones gave was considered so inadequate by the court, in view of the fact that the paper was printed in the office of the man with whom he was at enmity, as to confirm the other suspicious circumstances of secrecy and conspiracy in the case. These and other facts appearing in the record, the further pointing out of which would subserve no good purpose, warranted the court, we think, in finding for the respondent, and we cannot say that the judgment is not sustained by substantial evidence. True, the burden to prove the conspiracy was on respondents. But dark thoughts and dark deeds can seldom be shown by direct evidence, and may be shown by circumstances (5 R. C. L. 1088; 12 C. J. 644), and we cannot say that the burden of proof, resting upon respondents in the case at bar, has not been met.

Counsel for appellants present a point in their reply brief not mentioned in their original brief. While, they say, it is not necessary to tender the amount due under a lien before bringing an action for trover, where the lienholder has already appropriated the property to his own use (citing 26 R. C. L. 1129), it should have been done in this case. The theory upon which counsel make their claim is that Jones testified that he stated to Mrs. Wettlin that she might redeem the property and that it was under-

stood between him and Vollmer that she should be able to do so. In the first place, respondents were not compelled to receive back the property which had been once converted. Mier v. Ice Co., 56 Cal. App. 512, 206 Pac. 83; Fidalgo Island Shingle Co. v. Brown, 61 Wash. 516, 112 Pac. 629; Meek v. Smith, 59 Colo. 461, 149 Pac. 627; West Tulsa Belt Ry. Co. v. Bell, 54 Okl. 175, 153 Pac. 622 and cases cited. In the second place, Mrs. Wettlin denied any such statement. It does not appear that Vollmer ever made any such offer. In fact, he and Jones have from the beginning of this suit insisted and still insist that the foreclosure proceedings were lawful and that the Wettlins retained no further interest in the property after such foreclosure. If the point mentioned is material, the general finding of the trial court included a finding adverse to appellants on that issue, and in view of the conflict in the evidence, that finding cannot be disturbed.

The judgment below must accordingly be affirmed and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.

ON MOTION FOR ASSESSMENT OF PENALTY AND ALLOWANCE OF
ATTORNEY FEES

POTTER, Chief Justice.

The judgment in this case having been affirmed (See 234 Pac. 515), the respondents upon the appeal, plaintiffs below, have filed a motion for an order assessing penalty and allowing attorney's fees in the cause upon the ground that there was no just cause for the appeal; said motion being made under Section 6372, Comp. Stat. 1920. That section provides that when, "in any such case," the judgment or final order of the district court is affirmed, there shall be taxed, as part of the costs, a reasonable fee, to be fixed by the court, not less than twenty-five, nor more than three hundred, dollars, to the counsel of defendant in error; and the court shall adjudge to the defendant in error damages in such sum as may be reasonable, not exceeding five hundred dollars, unless the judgment or final order of the district court directs the payment of the money, and execution thereof was stayed in such proceeding in error in the supreme court, when in lieu of such penalty it shall bear additional interest at a rate not exceeding five per centum per annum for the time in which it was stayed, to be ascertained and awarded by the court; but if the supreme court certify in its judgment that there was reasonable cause for the proceeding in error, neither such fee, nor additional interest, nor penalty, shall be taxed, adjudged, or awarded.

That section was a part of the statutes before the adoption of the direct appeal statute of 1917, and when the only method of invoking the appellate jurisdiction of this court was by proceedings in error. But we do not feel called upon to decide, upon this motion, whether the provisions of the section apply partially or at all to a proceeding brought to this court under the direct appeal statute, as

the present case was. For it has already been certified in the order of this court disposing of the case upon the appeal that there was reasonable cause therefor; and we are of the opinion that there was reasonable cause for the appeal. That would render the provisions of the section inoperative, if it should be held to apply to a proceeding brought here by direct appeal. The motion will therefore be denied, and the costs of the motion will be taxed against the respondents on the appeal.

*Motion Denied.*

BLUME and KIMBALL, JJ., concur.

### ON PETITION FOR REHEARING

POTTER, Chief Justice.

A petition for rehearing in this case has been submitted, but it was not filed nor received by the clerk within the period allowed by the rules for its filing. Indeed, the package in which it was received, together with the brief in support thereof, appears to have been mailed at Lander, in Fremont County, where the cause arose and was tried, on the last day of the period allowed for filing a petition for rehearing; and that was too late for it to be received by the clerk of this court within said period. It is therefore not entitled to consideration. Bank of Chadron v. Anderson, 6 Wyo. 518, 536, 48 Pac. 197; Dean v. Oil Co., 21 Wyo. 133, 151, 128 Pac. 1023, 129 Pac. 1023; Tuttle v. Rohrer, 23 Wyo. 305, 318, 149 Pac. 857, 153 Pac. 27; Allen v. Houn, 30 Wyo. 186, 219 Pac. 573. Moreover, an examination of the petition and the brief in its support discloses that the sole question discussed is the sufficiency of the evidence to sustain the judgment, which was fully considered by the court in disposing of the case upon the original hearing; and the chief objection now presented is that this court mistakenly assumed in its opinion that certain statements made by defendant Jones to Mrs. Wettlin, as he testified, had not been denied by her. But, with-

out regard to whether that matter might be material or not, it may be said that counsel and not the court appears to have been mistaken as to the testimony in that particular. The statements referred to are that the defendant Jones, when he told Mrs. Wettlin that he had foreclosed the mortgage, also told her that she would have six months to redeem the mortgage in, if she cared to redeem it, and that he could arrange for that "with those people." The record on appeal shows that on cross examination of Mrs. Wettlin, she gave this testimony:

Q. Do you recall that at that time Mr. Jones made the statement to you that he understood you had six months to redeem the laundry? A. I do not. Q. Would you say that no such statement was made to you at that time? A. I would. Q. And if it was made, I understand you do not recall the statement? A. It was not made. Q. Was any similar statement made at that time? A. No sir. Q. Do you recall Mr. Jones saying in that connection that he would undertake to fix it with the then owner of the laundry so that you could redeem it at any time you wanted? A. He did not. Q. He told you at that time that he had foreclosed the mortgage? A. I asked him to please lay the cards on the table, and let me know directly; that I had it from hearsay and would like to hear from him whether he had done this or not, and he said he had.

Thus there would seem to be no ground for the contention in the petition and brief that the court's misunderstanding of the testimony in that respect may have led to the conclusion sustaining the sufficiency of the evidence. A rehearing will be denied.

*Rehearing Denied.*

BLUME and KIMBALL, JJ., concur.