**Bonnie I. MARTINEZ, Appellant (Defendant),**

v.

**ASSOCIATES FINANCIAL SERVICES COMPANY OF COLORADO, INC., Appellee (Plaintiff).**

No. 94–102.

Supreme Court of Wyoming.

March 13, 1995.

786

Jo Ann Fulton, Laramie, for appellant.

Michele K. McKellar of Moore, Smith & Williams, P.C., Fort Collins, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Appellee brought an action to recover from appellant on a promissory note. Appellant counterclaimed, alleging negligent lending. The district court denied the counterclaim and entered partial summary judgment in favor of appellee. Having received scarcely a nibble from the district court, appellant casts the same bait into appellate waters. Sharing the district court's measured distaste for red herring, we affirm in all respects.

## I. ISSUES

Appellant, Bonnie Martinez (Martinez), states her issues:

I. Did the district court err in dismissing defendant's [Martinez's] counterclaim?

II. Did the district court err in adjudicating material facts concerning appellant's default on the promissory note and finding no issues of material fact regarding the terms and conditions of the promissory note and mortgage and remedy provision contained therein?

Appellee, Associates Financial Services Company of Colorado, Inc. (Associates), restates the issues with a prefatory query:

I. Whether the appellant has filed a brief containing cogent argument and citations of authority sufficient to support reversal?

II. Whether the district court erred in dismissing defendant's/appellant's counterclaim?

III. Whether the district court erred in granting plaintiff's/appellee's motion for summary judgment?

Definitive answers to the two shared issues should satisfy the curiosity articulated in Associates' first issue.

## II. FACTS

■ Martinez feels aggrieved by the district court's dismissal of her negligent lending counterclaim, pursuant to W.R.C.P. 12(b)(6), for failure to state a claim upon which relief could be granted, and attacks the summary judgment subsequently entered against her. On the W.R.C.P. 12(b)(6) dismissal, we divine the "facts" by viewing Martinez's pleadings with a liberality verging on charity, resolving any doubt in favor of her contentions. *Osborn v. Emporium Videos*, 848 P.2d 237, 239–40 (Wyo.1993). Our factual perspective on summary judgments is not markedly different; although, like the district court, we have the additional benefit of peripheral vision afforded by the capacity to consider matters outside the pleadings. *Davis v. Davis*, 855 P.2d 342, 345 (Wyo.1993). In May of 1990, Martinez executed a promissory note to Associates for the principal sum of $9,314.22, secured by a home mortgage. When she defaulted on a $202.36 note payment in late 1990, Associates served Martinez with a notice of right to cure default on December 31, 1990. Disregarding a murky record on this point, we will assume, as did the district court, that Martinez dutifully cured the default which was the subject of that notice.

Thereafter, however, Martinez admits that she refused to make further payment on her

note over the succeeding sixteen months. On May 26, 1992, Associates sued for the principal amount, interest, collection costs and legal fees. Martinez counterclaimed, alleging that Associates was impermissibly diffident in conducting its business with her by mail but, because of superior knowledge and unequal bargaining power, knew or should have known that they had thereby established a fiduciary relationship with her.

## III. STANDARD OF REVIEW

Little additional ink need be spilled here about the jealousy with which we dispense approval of W.R.C.P. 12(b)(6) dismissals, past the declaration that dismissal of any claim is a "drastic" remedy which will only be sustained on appeal if "there is no doubt that the [appellant] cannot prove any set of facts that would entitle [her] to relief." *Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.,* 608 P.2d 1299, 1302 (Wyo.1980). W.R.C.P. 8 adopts the common sense approach of notice pleading. *Jackson State Bank v. Homar,* 837 P.2d 1081, 1085 (Wyo.1992). The theory is that if the underlying allegations admit of any possibility that they may be the "proper subject of relief," we ought not deprive Martinez of the opportunity to test her counterclaim on its merits. *Beaudoin v. Taylor,* 492 P.2d 966, 970 (Wyo.1972) (*quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962)).

We are not appreciably more generous in granting approbation to summary judgments. *Hozian v. Weathermon,* 821 P.2d 1297, 1298–99 (Wyo.1991). The odds favoring summary judgments do improve marginally insofar as the interpretation of unambiguous contracts remains solely a question of law, making disputes relating to such pacts proper grist for the mill of summary judgment. *Sturman v. First Nat. Bank,* 729 P.2d 667, 677 (Wyo.1986). Standing in the shoes of the district court, we must determine anew whether any genuine issue of material fact exists and, if not, whether the party prevailing below is entitled to judgment as a matter of law. *Lincoln v. Wackenhut Corp.,* 867 P.2d 701, 702 (Wyo.1994).

## IV. DISMISSAL OF THE COUNTERCLAIM

The district court's trenchant precis of Martinez's counterclaim leaves little room for improvement:

"You [Associates] should have known better than to loan me [appellant] the $9,314.22 that I requested to borrow; therefore, I don't need to pay you back and, instead, you can also give me all of the principal and interest (approximately $30,000) I've paid on my house mortgage."

As the district court observed, a certain generosity of spirit is requisite to characterize the foregoing as a "legal theory," although the words of the counterclaim suggest a putative issue of negligent lending. Martinez and Associates did business by mail and Martinez alleges that Associates, possessed of "superior knowledge," failed to properly investigate Martinez before granting the loan in question. Martinez alleges a "fiduciary relationship" of which Associates "[knew] or should have known * * *." The counterclaim portrays Martinez's loan applications as fraudulent in some fashion which, had Associates ferreted out, would have necessitated denial of the loan.

The extent of the relationship between Martinez and Associates, for purposes of this action, is defined and delimited by the promissory note. Such a contractual relationship between a lender and its customer traditionally imposes duties upon the lender "no higher than the morals of the market place." *Rader v. Boyd,* 252 F.2d 585, 587 (10th Cir.1957); *In re M. Paolella & Sons, Inc.,* 161 B.R. 107, 118 (E.D.Pa.1993), *aff'd,* 37 F.3d 1487 (3rd Cir.1994). In the absence of special circumstances, the legal relationship between a lending institution and its customer is that of debtor or creditor. *Resolution Trust Corp. v. Wellington Development Group,* 761 F.Supp. 731, 737 (D.Colo. 1991) (*quoting Dolton v. Capitol Federal Sav. and Loan Ass'n,* 642 P.2d 21, 23–24 (Colo. App.1981)); *Rivera v. Central Bank & Trust Co.,* 155 Colo. 383, 395 P.2d 11, 13 (1964). This notion is consistent with our refusal to rewrite unambiguous contracts under the guise of interpretation. *Lawrence v. Farm Credit System Capital Corp.,* 761 P.2d 640,

645 (Wyo.1988); *cf.* A. Brooke Overby, *Bondage, Domination, and the Art of the Deal: An Assessment of Judicial Strategies in Lender Liability Good Faith Litigation*, 61 Fordham L.Rev. 963, 1024 (1993).

Theory, however, suggests that lenders *may* incur extra-contractual duties to customers through conduct which creates a special or fiduciary relationship. John M. Burman, *Lender Liability in Wyoming*, 26 Land and Water L.Rev. 707, 712 (1991). Although it freights some very specific kinds of legal rights and responsibilities, the concept of a fiduciary relationship is firmly grounded in equity. *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235, 1241 (1982). Successful establishment of such a relationship *may* open the door to pursuit of a wide array of common law theories of lender duty to borrower, depending upon the law of the forum. Andrea Bloom, *Lender Liability: Practice and Prevention*, ch. 3 (1989 & Cum. Supp.1994 No. 2).

If, as Professor Burman believes, "the lender liability pendulum may now be swinging back toward lenders," the instant case can do little to slow that momentum. Burman, *supra*, 26 Land & Water L.Rev. at 755. That does not necessarily reflect our lack of interest in the varied theories of lender liability. However, improvident pleadings run a close second to bad facts as leading makers of bad law and we refuse to be drawn down the garden path by the instant confluence of both.

■ Extra-contractual lender duties, if there are any, must necessarily be predicated upon demonstration of a special or fiduciary relationship. Burman, *supra*, 26 Land & Water L.Rev. at 712–13, 718 & 730. Such a relationship is extraordinary and not easily created. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.1989). Fiduciary relationships cannot be the product of mere wishful thinking, carrying as they do the most profound of legal consequences. *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 832–33 (Wyo.1994).

At best, it is unseemly to beg for equitable relief based upon one's own wrongdoing. *Wettlin v. Jones*, 32 Wyo. 446, 453, 234 P. 515, 517 (1925). Had Martinez succeeded in pleading breach of a fiduciary relationship by Associates, we would have remained "chary" of extending the helping hand of equity to a litigant who acts so as to hinder or defraud her creditors. *Wantulok v. Wantulok*, 67 Wyo. 22, 41, 214 P.2d 477, 484 (1950). Since Martinez's pleadings betray no hint of a fiduciary relationship, we need not dwell upon equity's distaste for unclean hands in order to fully dispose of her counterclaim.

■ Of the two essential kinds of fiduciary relationships, the first arises from specific legal relationships. "In cases of trustee and beneficiary, principal and agent, and the like, the relations are essentially fiduciary, and the inference or presumption follows of course." *Hoge v. George*, 27 Wyo. 423, 442, 200 P. 96, 102 (1921). The second is less susceptible of exact definition, being "implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Denison State Bank*, 640 P.2d at 1241. *See Binning v. Miller*, 55 Wyo. 478, 497, 102 P.2d 64, 73–74 (1940).

■ Courts of equity are not wont to artificially limit the factual scenarios which may give rise to those less clearly defined kinds of fiduciary relationships. *Children's Home of Rockford v. Andress*, 380 Ill. 452, 44 N.E.2d 437, 443 (1942). However, one asserting a fiduciary relationship bears the burden of establishing it by clear and convincing evidence, and we will not over reach ourselves to posit such a profound circumstance. *Hoge*, 200 P. at 102; *Appleman v. Kansas–Nebraska Natural Gas Co.*, 217 F.2d 843, 848 (10th Cir.1954).

Few, if any, courts see prior dealings or a longstanding lender-borrower relationship, without more, as crossing the threshold for establishment of a fiduciary relationship, because the nexus "in a lender-borrower situation is a debtor-creditor relationship, and not a fiduciary relationship." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 804 P.2d 900, 905 (1991); *cf. In re K Town, Inc.*, 171 B.R. 313, 319 (N.D.Ill.1994); *and see O'Donnell v.*

*Western Nat. Bank of Casper,* 705 P.2d 1242, 1244–45 (Wyo.1985).

If the unilateral actions or beliefs of a party were sufficient to establish a fiduciary relationship, then Martinez should have been afforded the opportunity to try her case on the merits, no matter how far-fetched. What her pleadings lack, and what they make clear that no amendment can supply, is a knowing undertaking by Associates for the benefit of Martinez. *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660, 675–76 (1983). "Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary[.]" *Farmers Ins. Co., Inc. v. McCarthy,* 871 S.W.2d 82, 87 (Mo.App.1994). A fiduciary is defined as: "A person having duty, ***created by his own undertaking,*** to act primarily for another's benefit in matters connected with such undertaking." Black's Law Dictionary 625 (6th ed. 1990) (emphasis added).

■ The gravamen of Associates' offense, according to the counterclaim, was that they conducted business by mail and failed to undertake even a cursory investigation of the claims made by Martinez in her application. Such "facts," were they proven, would not admit of a fiduciary relationship so much as they would disprove any possibility thereof. One may not "unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Denison State Bank,* 640 P.2d at 1243–44. *See, Hoge,* 200 P. at 102.

■ The liberality with which we construe pleadings in favor of the party against whom a W.R.C.P. 12(b)(6) motion to dismiss has been granted "does not go so far as to excuse omission of that which is material and necessary in order to entitle [one to] relief." *Sump v. City of Sheridan,* 358 P.2d 637, 642 (Wyo.1961). Here what is material and necessary to any finding of lender liability is not only omitted but excluded by that which is alleged. Furthermore, as the district court observed, there is nothing in the counterclaim which alleges that Associates did anything they were not entitled to do under the law. *Mummery v. Polk,* 770 P.2d 241, 243 (Wyo.1989).

Under such circumstances, the counterclaim is ripe for summary dismissal. *Mellencamp v. Riva Music Ltd.,* 698 F.Supp. 1154, 1160 (S.D.N.Y.1988). Sharing the reluctance of other courts "to draw a fiduciary rabbit from a commercial loan agreement hat," we affirm the district court's dismissal of Martinez's counterclaim. *Washington Steel Corp. v. TW Corp.,* 602 F.2d 594, 600 (3rd Cir.1979), *overruled on other grounds sub nom. Clark v. K–Mart Corp.,* 979 F.2d 965, 967–68 (3rd Cir.1992).

## V.  SUMMARY JUDGMENT

Martinez's answers to Associates' amended complaint and first set of requests for admissions, read in concert with her sworn statements in deposition, fully inform the issue of summary judgment. She admits to having executed the promissory note in question and delivered that note to Associates with full knowledge of its default provisions. She admits to having received the proceeds of the loan reflected in that promissory note. Finally, she admits to having received a notice of right to cure default from Associates and, thereafter, refused "to make any additional payments on the alleged Promissory Note[.]"

■ When clear and unambiguous contracts are at issue, the question becomes whether the party seeking summary judgment is entitled to it as a matter of law. *Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994). Our inquiry parallels that of the district court in determining whether "(1) there are no genuine issues of material fact, and (2) based on those undisputed material facts the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56." *Dubray v. Howshar,* 884 P.2d 23, 25 (Wyo. 1994).

Associates carried their burden of establishing the elements of a contract and Martinez raises no dispute in that regard. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1272 (Wyo.1993). Examination of that contract, as evidenced by the promissory note, sustains the wisdom

of the district court in terming it "a standard, unambiguous loan agreement."

Whether or not Martinez responded appropriately to Associates' notice of right to cure default, she admits to having received that notice and, thereafter, refused to make further monthly payments in the sixteen months between the notice and the filing of the original complaint. Finally, Martinez does not dispute the affidavit of indebtedness filed by Associates.

 When a party moving for summary judgment provides competent factual underpinnings therefor, the other party is obliged to move beyond mere allegations or denials by coming forward with affidavits or other proof to create a genuine issue for the court. *Dudley v. East Ridge Development Co.*, 694 P.2d 113, 117 (Wyo.1985). Past unavailing efforts to transmogrify construction of the note from a legal to a factual question, Martinez renews colorable arguments concerning Associates' choice of remedies and refusal, as junior lienor, to participate in a previous foreclosure on the property which secured Martinez's note.

 The opacity of Martinez's argument concerning Associates' non-participation in the prior foreclosure affords no impediment to resolution because her contentions do not "reach the dignity of proper citation of authority or cogent argument." *Prazma v. Kaehne*, 768 P.2d 586, 588 (Wyo.1989). Alt: gh Martinez's choice of remedies argument is similarly deficient, Associates cites us to the correct rule, that a secured creditor may seek judgment on the note or pursue the remedy of foreclosure, among other options, provided the choice made is pursued "to fruition," before further consideration is given to any alternative. *Coones v. F.D.I.C.*, 848 P.2d 783, 797 (Wyo.1993). Martinez has raised no issue of material fact and Associates is entitled to judgment as a matter of law.

## VI. CONCLUSION

We refuse to be drawn through the looking glass into a world where individual responsibility gives way to ill-conceived and poorly articulated notions of "victimization." Hav-

ing made a contract with Associates and received consideration therefor, Martinez cannot escape the consequences of her subsequent willful default.

The district court's well reasoned dismissal of Martinez's counterclaim and entry of partial summary judgment in favor of Associates are affirmed.